CENTRAL R. R. & BANKING CO. v. GEORGIA CONSTRUCTION & INVESTMENT COMPANY.

FLETCHER, TRUSTEE, v. SAME.

CORRELL & EMONSON v. SAME.

NATIONAL BANK OF GREENVILLE v. SAME.

*EX PARTE* THE PENNSYLVANIA STEEL COMPANY.

1. An action may be brought in the Circuit Courts of this State "against a corporation created by or under the laws of any other State, govern-

ment, or country," by a resident of this State for any cause of action, but by a non-resident *only* when the cause of action shall have arisen in this State, or when the subject of the action is situated within this State.

2. An attachment is a provisional remedy in aid of an action, and can issue only where an action has been commenced. Therefore, where the action fails for want of jurisdiction in the court, the attachment issued thereunder must fall with it. *Ex parte Dickinson*, 29 S. C., 465, explained.

3. Property levied on after the action is commenced, under a warrant of attachment, and not described or even mentioned in the complaint, is not the subject of the action. In action on money demands, property of the defendant attached to secure the judgment when rendered is not "the subject of the action."

4. The privileges and immunities secured to the *citizens* of other States by the Constitution of the United States, do not require this State to extend to *non-residents* the same unlimited right of suit against foreign corporations as is accorded to residents of the State.

5. A limitation upon the right of a non-resident to bring action against a foreign corporation does not impair the obligation of contracts.

6. A State may make such regulations in regard to foreign corporations as it deems best. It may exclude them altogether, or it may place such restrictions upon them as the legislature may determine.

7. The provision of the Constitution of this State (art. I., § 15), that "all courts shall be public; and every person, for any injury that he may receive in his lands, goods, person, or reputation, shall have remedy by due course of law and justice," does not give to non-residents a right of action on contracts, but was intended to secure to residents of this State access to the courts for injuries received.

8. This case distinguished from *Bank v. Stelling*, 31 S. C., 366.

9. Where the complaint of a non-resident against a foreign corporation states that a contract was made to do certain work on a railroad which was to be built partly in this State, that such work was done to large extent in this State, and affidavits on motion to vacate the attachment show that a part of plaintiff's claim was evidenced by notes executed in this State, there was no error in ruling that the cause of action, to large extent, arose in this State. And to such extent the attachment was valid.

10. The affidavits in these cases sufficiently stated the causes of action and the grounds thereof to sustain warrants of attachment.

11. Where property in the possession of defendant is attached, and a third person intervenes by petition, claiming ownership, and an issue is ordered to try this issue, the intervening claimant should be the actor in such issue.

Before HUDSON, J., Greenville, June, 1889.

These were four actions heard together.

The following is a copy of the complaint in the case of J. W. Fletcher, as trustee:

"The plaintiff complains and alleges,—

"1. That at the times hereinafter mentioned, the defendant was, and still is, a corporation created by and under the laws of the State of Georgia, and was then, and still is, capable of suing and being sued, and of entering into the contract hereinafter mentioned, and has property in this State, and is doing business here.

"2. That between the 1st day of January, 1888, and the 24th day of September in the same year, T. K. Brown and A. B. Fortune were partners, doing business under the name of Brown and Fortune.

"3. That between the said dates, the said defendant became and was indebted unto the said Brown & Fortune in the sum of thirty-three thousand four hundred and eighty-four dollars upon account for work and labor performed, materials furnished, and cash paid by the said Brown & Fortune for the defendant, at its special instance and request, and under a contract with defendant so to do, the said work having been performed upon, and materials and cash furnished for, the construction of the track of the Carolina, Knoxville, and Western Railway Company, upon which said account the sum of sixteen thousand eight hundred and two dollars has been paid, leaving a balance now due of sixteen thousand six hundred and eighty two dollars.

"4. That on the said 24th day of September, 1888, the said Brown & Fortune assigned, transferred, conveyed, and set over to the plaintiff, as trustee, all of their property of every kind whatsoever, including the said claim against the said defendant, in trust, nevertheless, to collect all claims and convert all the property into money, and to pay over the proceeds thereof to the creditors of the said Brown & Fortune, in the manner set forth in the said assignment; that the plaintiff accepted said trust, and immediately entered upon the discharge thereof; that no part of the said balance of sixteen thousand six hundred and eighty-two dollars has been paid, and the plaintiff, as trustee as aforesaid, is still the owner thereof.

"Wherefore the plaintiff demands judgment against the said

21—32

defendant for sixteen thousand six hundred and eighty-two dollars and costs."

The summons was issued on October 13th, 1888. On the same day the plaintiff obtained from the clerk of the court a warrant of attachment in the usual form against the property of the defendant upon an affidavit, of which the following is a copy:

"J. W. Fletcher, the plaintiff above named, being duly sworn, says:

"1. That the above named defendant is justly and truly indebted to the deponent, as trustee, under an assignment made to him by Brown & Fortune, a firm or copartnership lately composed of T. K. Brown and A. B. Fortune, dated the 24th day of September, 1888, for the benefit of their creditors, in the sum of sixteen thousand six hundred and eighty-two dollars, and deponent believes that he is justly entitled to recover said sum.

"2. That the defendant is a foreign corporation, created under the laws of the State of Georgia, having their place of business in Augusta, in that State.

"3. That the defendant has property within this State, consisting of a railway track, being part of a track built for the Carolina, Knoxville, and Western Railway Company in the County of Greenville, and also a lot of steel rails, spikes, cross-ties, and sawed lumber likewise in said county, and a large lot of steel rails, spikes, and other property at Port Royal, in said State, or in course of transportation therefrom.

"4. That the cause of action for which defendant is indebted to the plaintiff is for grading or graduation, masonry work, irregular work, bridge work, and material for bridge over the Tennessee River, stone work in quarries, building on said works, laying track and track timber, cross-ties, derrick boats, horse power flat boats, derrick and fixtures, and for quarries, all of which work was done and materials furnished by said Brown & Fortune for the defendant, under contract with it on the Carolina, Knoxville, and Western Railway Company, the amount being a balance upon account, and assigned by the said Brown & Fortune to deponent as trustee for the benefit of creditors.

"5. That the plaintiff has commenced an action in this court

by issuing the summons hereto annexed against said defendant upon the cause of action above stated."

Sworn to October 13, 1888.

The following is a copy of the complaint in the case of Correll & Emonson:

' The complaint of the above named plaintiffs respectfully shows to the court:

"1. That the plaintiffs, J. B. Correll and A. Emonson, are partners, doing business under the firm name of Correll & Emonson.

"2. That the defendant is a corporation duly created by and under the laws of the State of Georgia, owning property in this State and county.

"3. That at the times hereinafter named, the defendant corporation was engaged in constructing that part of the Carolina, Knoxville, and Western Railway lying between the city of Greenville, in the State of South Carolina, and the city of Knoxville, in the State of Tennessee.

"4. That on the ———— day of March, 1888, the defendant, through its proper officers, entered into a contract with these plaintiffs, whereby they employed these plaintiffs to do certain work in grading said railway at certain stipulated prices, and these plaintiffs thereby bound themselves to do said work at the prices agreed on.

"5. That in pursuance of said contract, these plaintiffs and their servants have done a large amount of work in the grading of said railway, and there remains due them on account thereof, after deducting all payments, and upon the estimates•of the engineers of the said defendant, the sum of twenty-nine thousand nine hundred and seven dollars, a bill of particulars of which is hereto attached as a part of this complaint.

"6. That no part of said sum of twenty-nine thousand nine hundred and seven dollars has been paid, and the defendant is justly indebted to the plaintiffs in that sum.

"Wherefore the plaintiffs demand judgment against the defendant for the said sum of twenty-nine thousand nine hundred and seven dollars and costs."

BILL OF PARTICULARS.

"Amount due, as per estimate of engineer,      .    $14,240 86
"Expenses moving,       .       .       .        2,000 00
"Shanties, &c.,         .       .       .    .     500 00
"Expenses moving to S. C.,      .       .         500 00
"Work in N. C. since estimates,     .       .    2,500 00
"Work in S. C. since estimates,     .       .    1,500 00
"Other items not included above,    .       .    8,667 00."

(*Complaint verified.*)

The summons was issued on November 17th, 1888.  At the same time, the plaintiffs procured from the clerk of the court a warrant of attachment of the usual form, upon the following affidavit:

"Before me personally comes A. Emonson, one of the above named plaintiffs, who, being duly sworn, deposes and says, that he is a member of the firm of Correll & Emonson, plaintiffs above named, which said firm is composed of deponent and J. B. Correll.  Deponent further says, that plaintiffs have a cause of action against the defendant for the sum of twenty-nine thousand nine hundred and seven dollars, for work and labor performed and materials furnished for, in behalf of, and at the request of the defendant, and has instituted suit therefor in this court.  Deponent further says, that defendant is a foreign corporation, created by and under the laws of the State of Georgia, but has property in this State."

Sworn to November 16th, 1888.

The complaint in the case of the Central Railroad and Banking Company is as follows:

"The complaint of the above named plaintiff respectfully shows to the court:

"1. That the plaintiff is a corporation duly chartered and created under the laws of the State of Georgia as the Central Railroad and Banking Company of Georgia.

"2. That the defendant is also a corporation duly chartered and created under the laws of the State of Georgia as the Georgia Construction and Investment Company.

"3. That on the 19th day of May, 1888, the defendant made

and delivered to the plaintiff its promissory note in writing, whereby it promised to pay to the plaintiff herein, four months after the date thereof, the sum of six thousand and five hundred dollars, for value received.

"4. That R. P. Sibley was, at the date of the said note, and still is, president of the said defendant company.

"5. That the said note has long since become due and unpaid, and no part thereof has been paid.

"6. That the plaintiff herein is the legal owner and holder of said note, and there is due and remaining unpaid to the plaintiff the sum of six thousand five hundred dollars, with interest on the same from the 22nd day of October, 1888.

"Wherefore the plaintiff prays judgment against the defendant for the sum of six thousand and five hundred dollars, principal and interest, from the 22nd day of October, 1888, and the costs of this action."

The summons was issued on December 15th, 1888; and on the same day the plaintiff herein procured from the clerk of the court a warrant of attachment of the usual form, against the property of the defendant, upon the following affidavit:

"Before me personally comes Joseph Ganahl, the agent and attorney of the plaintiff, who, being duly sworn, deposes and says, that he is the agent and attorney of the Central Railroad and Banking Company of Georgia, a corporation duly chartered under the laws of the State of Georgia; that the Georgia Construction and Investment Company is likewise a corporation duly chartered under the laws of the State of Georgia, and that said defendant is justly and truly indebted to the plaintiff herein in the sum of six thousand and five hundred dollars, and interest on the same from the 22nd day of October, 1888, on a promissory note, dated May 19th, 1888, payable four months after date to the order of R. P. Sibley, at the Central Railroad Bank in Savannah, Ga., and duly endorsed to said Central Railroad and Banking Company by said R. P. Sibley, who is president of the said Georgia Construction and Investment Company. And that the Georgia Construction and Investment Company is a corporation in the State of Georgia, as aforesaid, and, as far as this deponent knows, has no office in this State, but that said defendant company has

property within this State, both real and personal, to wit, several lots of land, steel rails, lumber, flat cars, &c., &c. That the plaintiff has commenced an action in this court by issuing the summons hereto annexed against the defendant company upon the cause of action above stated."

Sworn to December 15th, 1888.

Practically the same property was levied upon; and the summons was served by publication.

The case of the National Bank of Greenville was commenced on    day of    , 1888, but as the regularity of the proceedings in that case is not brought in question in this appeal, it is not material to set forth the proceedings.

In all of the above stated cases the Pennsylvania Steel Company intervened by way of petition, of which the following is a copy:

"To the Judge of the Circuit Court of Greenville County:

"The petition and claim of the Pennsylvania Steel Company of Philadelphia, in the State of Pennsylvania, respectfully shows:

"1. That the Pennsylvania Steel Company is a corporation duly organized under the laws of the State of Pennsylvania.

"2. That the Pennsylvania Steel Company prior to the fifth day of June, 1888, contracted with the Georgia Construction and Investment Company, defendant in the above entitled suit, to sell to said company a lot of steel rails for construction of a railroad, at a price and on terms of sale agreed upon between them.

"3. That on the fifth day of June, 1888, the Pennsylvania Steel Company, in pursuance of said contract of sale, caused to be shipped from the city of Philadelphia, in the State of Pennsylvania, via the Port Royal and Augusta Railroad, thirteen hundred and four steel rails, weighing three hundred and twenty-five gross tons, to be transported by the Port Royal and Augusta Railroad Company and its connecting lines to Greenville, in the State of South Carolina, and there to be delivered to the said Georgia Construction and Investment Company.

"4. That likewise, in pursuance of said contract of sale, the said Pennsylvania Steel Company on the 15th day of June, 1888, caused to be shipped from the city of Philadelphia, in the State of Pennsylvania, via the Port Royal and Augusta Railroad, twen-

ty-seven hundred and six steel rails, weighing six hundred and seventy-five 29–224 tons, to be transported by the Port Royal and Augusta Railroad and its connecting lines to Greenville, in the State of South Carolina, and there to be delivered to the said Georgia Construction and Investment Company.

"5. That at the times hereinafter mentioned there was and still is due to the Pennsylvania Steel Company by the said Georgia Construction and Investment Company, for and on account of the purchase money of the said steel rails so shipped under said contract of sale, the sum of sixteen thousand and five hundred dollars.

"6. That a portion of said steel rails, viz.: 271 at Laurens depot, in the County of Greenville, being still in the course of transportation and before delivery to the said Georgia Construction and Investment Company, the vendees under said contract of sale, were levied upon under a warrant of attachment issued by the clerk of the court of Greenville County in the above entitled suit, under which warrant the sheriff of Greenville County on the day of        , 1888, returned as attached the said 271 rails at said point above named. That the remainder of said rails so levied upon under said warrant by the sheriff of Greenville County, viz.: 70 at McBee's depot lot, in the County of Greenville, 330 near Reedy River church, in the County of Greenville, and 107 near Carter's Shop, in the County of Greenville, were at the time of said levy in the possession of the said Georgia and Construction and Investment Company, but were held by the said Georgia Construction and Investment Company, subject to the order of your petitioner, the Pennsylvania Steel Company, and as the property of the said Pennsylvania Steel Company until paid for.

"7. That subsequent to the making of the said contract of sale and before delivery of the said rails to the said Georgia Construction and Investment Company, and before the issuing of the notices hereinafter mentioned, the said Georgia Construction and Investment Company became and still is insolvent and unable to pay the said sum of $16,500 so due by it to the Pennsylvania Steel Company.

"8. That the said Port Royal and Augusta Railroad Company

and its connecting lines, in whose custody and under whose control said rails were at the time undelivered, were duly notified by the said Pennsylvania Steel Company not to deliver the rails so shipped under said contract of said sale, and said notices were given before the delivery of said rails to the said Georgia Construction and Investment Company.

"Wherefore your petitioner claims the said steel rails mentioned in paragraph 6 hereof as its property, and prays that the same may be so adjudged, and that the sheriff of Greenville County may be ordered to deliver the same to your petitioner, and for such other and further relief as may be just, together with the costs of this proceeding."

The plaintiffs in each of the said cases answered the petition of the Pennsylvania Steel Company, denying the material allegations, averring that the rails shipped by said company to the Georgia Construction and Investment Company were all delivered before the attachments were levied; that the contract set up by the Pennsylvania Steel Company, if made, was not in writing and had not been recorded, and that the plaintiffs had no notice thereof, &c.

The defendant made no appearance in the above entitled cases, except as hereinafter mentioned.

On June    , 1889, the defendant served in each of the cases brought by Correll & Emonson, the Central Railroad and Banking Company of Georgia, and J. W. Fletcher, as trustee, a notice of motion to dissolve the several attachments, of which the following is a copy:

"Take notice that the undersigned appear as attorneys for the defendant herein for the special purpose of making the motion hereinafter noted.

"Take notice further, that the undersigned will move before his honor, Judge J. H. Hudson, at chambers, in the city of Greenville, S. C., on June 11th, 1889, at 8.30 p. m., or as soon thereafter as counsel can be heard, for an order setting aside and discharging the warrant of attachment issued herein, upon the following grounds:

"1. Because the warrant of attachment was irregularly issued.

"(a) Inasmuch as the affidavit upon which it was issued does not state a cause of action, specifying the grounds thereof.

"(b) Inasmuch as the said affidavit states that the defendant is a foreign corporation, but does not state that the plaintiffs are residents of this State, or that the cause of action arose, or that the subject of action is situate, in this State.

"2. Because the warrant of attachment was improvidently issued, inasmuch as the defendant is a foreign corporation and the plaintiffs are non-residents of this State, and neither the cause of action arose, nor is the subject of action situate, in this State.

"3. Because it does not appear upon the face of the proceedings herein that the court has jurisdiction of this action.

"4. We will move further to set aside the levy of the attachment upon the road-bed of the Carolina, Knoxville and Western Railroad Company, upon the ground that the road-bed is not subject to levy or attachment, and that it is the property of the railroad company, and not of this defendant, as appears by the sheriff's return."

In the case of J. W. Fletcher, as trustee, notice was given also of a motion to set aside the levy and return, upon the ground that the return was irregular and void in that it states that the property levied upon under said attachment was the property of the Carolina, Knoxville and Western Railway Company.

In the case of J. W. Fletcher, trustee, there was served with the notice an affidavit of R. P. Sibley, stating that he was and is president of the defendant company; that the business office of the defendant was situate in the city of Augusta, Ga., where the defendant also resided, and that at the time of the service of the summons upon him he was only temporarily in this State, being here for two days only; and that the claim set up in the complaint did not arise in this State, but in the State of Tennessee; that it was for work and labor performed in that State under a contract made and executed there. And that the plaintiff and both members of the firm of Brown & Fortune are non-residents. The truth of these statements was not controverted by the plaintiffs.

In the case of Correll & Emonson there was served with the notice the following affidavit:

"Personally appeared before me R. P. Sibley, who, being duly sworn, says that he is, and at the time of the commencement of this action was, the president of the defendant company, whose office was situate in the city of Augusta, in State of Georgia; that neither the firm of Correll & Emonson, nor any member of said firm, is now, or at the time of the commencement of this action was, a resident of the State of South Carolina, but that they are and were at the said time residents of the State of Arkansas, I believe; that the cause of action alleged in the complaint did not arise in the State of South Carolina."

Sworn to June 5, 1889.

In reply to this affidavit, Correll & Emonson served the following affidavits:

"Personally comes A. Emonson, one of the above named plaintiffs, who, being duly sworn, deposes and says that his firm of Correll & Emonson, the plaintiffs herein, under their contract with the defendant, the Georgia Construction and Investment Company, were to do certain work on the Carolina, Knoxville and Western Railway in the State of South Carolina, and that in pursuance thereof the plaintiffs did work on said railway in grading, &c., in the County of Greenville, and State aforesaid, amounting to thirteen hundred and fifty one 78-100 dollars, which is due them therefor by the defendant, is unpaid, and is included in this suit. That in addition thereto, the defendant agreed to pay the expenses of removing and erecting shanties, &c., which amounts to five hundred dollars more, which is included in this suit. That there is also included in this suit, under the head 'other items not included above,' the additional sum now of about nine thousand dollars on causes of action which arose in this State."

Sworn to June 11, 1889.

"J. T. Stone, being duly sworn, says he was chief engineer of the defendant, the Georgia Construction and Investment Company, and also for the Carolina, Knoxville and Western Railway Company, during the whole time that the plaintiffs worked for the defendant, and that he knows that they did work for the defendant on said railway in Greenville County, South Carolina, to the amount of thirteen hundred and fifty-one 78-100 dollars."

Sworn to June 11, 1889.

To these affidavits the defendant replied with the following :

"Personally appeared before me R. P. Sibley, who, being duly sworn, says that he has read the complaint in the above entitled action ; that he is, and at the times mentioned in the said complaint was, the president of the said Georgia Construction and Investment Company, the above named defendant. Deponent further swears that the Georgia Construction and Investment Company never made or executed any contract with the above named plaintiffs, Correll & Emonson, at the time alleged in the 4th paragraph of the complaint ; that about that time, to wit, February, 1888, this deponent, as president of the above named defendant, did make and execute a contract in writing at Knoxville, in the State of Tennessee, with one D. L. Boyd, with whom alone said contract was made. That the said firm of Correll & Emonson were sub-contractors of the said D. L. Boyd. That the said contract so alleged in said complaint was made with the said D. L. Boyd, and was for the performance of work in the State of North Carolina. Deponent further swears that the plaintiffs in said action, to wit, the said J. B. Correll and A. Emonson, at the times of making said contract and bringing said action were not and never have been residents of the State of South Carolina, but that as deponent is informed and believes the said J. B. Correll is a citizen of either of the State of Arkansas or the State of Tennessee, and the said A. Emonson is a citizen of the State of Arkansas."

Sworn to June 10, 1889.

"Personally appeared before me H. J. Haynsworth, one of the defendant's attorneys, who, being duly sworn, says that the affidavits of A. Emonson and J. T. Stone were served upon him too late on the 11th inst. for him to communicate with defendant's officers ; that on the service upon him of said affidavits he inquired of Capt. Wells. one of plaintiffs' attorneys, what was included in 'other items not included above,' mentioned in the affidavits, and he replied. 'Promissory notes made at Greenville, S. C.' Deponent inquired where they were made payable, and he said that his recollection was that the place was not specified ; that his clients had

the notes with them, and he could not obtain them in time for this hearing."

Sworn to June 12, 1889.

The Pennsylvania Steel Company gave the following notice in each case:

"Take notice, that on the 12th day of June, 1889, at nine o'clock in the forenoon, or as soon thereafter as counsel can be heard, we will move before his honor, Judge Hudson, at the court house in Greenville, South Carolina:

"I. That the summons and complaint in the above action be set aside and the attachment issued thereunder be dissolved, upon the ground that this court has no jurisdiction of the cause of action or of the parties or of the process of attachment issued in said cause; and that the proceedings upon their face do not state a cause of action, and are illegal and void. in that:

"(a) It appears in the complaint that plaintiff is not a resident of this State.

"(b) It does not appear that the cause of action arose within this State.

"(c) It appears on the face of the complaint that the action is brought against a corporation created under the laws of another State (Georgia), and that the subject of the action is such as cannot be situated within this State.

"(d) That plaintiff is not a resident of this State, and the cause of action did not arise within this State.

"Failing in the above, we will move:

"II. That the issue between the plaintiff above named and the claimant, the Pennsylvania Steel Company, be made up under the direction of the judge to try the question between them under the above entitled proceeding.

"III. That the right of the said claimant, the Pennsylvania Steel Company, to the property claimed by it in the above entitled proceeding, which property has been attached by plaintiff above named, and several other attaching creditors of the above named Georgia Construction and Investment Company, as against all of the said attaching creditors, be tried in one and the same action.    BARKER, GILLILAND & FITZSIMONS,

"Attorneys for Penn. Steel Company."

After argument, Judge Hudson announced that he would not discharge the attachments. Thereupon Westmoreland & Haynsworth, saying that they appeared for only the special purpose, moved the court without previous notice to dismiss the complaint in each of the three first above entitled cases, upon the ground that it appeared upon the face of the complaint that the court was without jurisdiction.

This motion was refused also. Judge Hudson filed the following decree :

"These actions were commenced by attachment, and in each case the Pennsylvania Steel Company intervened by petition and made claim to part of the property attached. That company and the defendant company severally move to vacate the attachments.

"The defendant company, a corporation created by and under the laws of Georgia, was engaged in constructing the Carolina, Knoxville and Western Railroad from Greenville, in this State, to Knoxville, in the State of Tennessee, and becoming involved, suits were commenced and writs of attachment issued by the above named plaintiffs against said defendant, and property in this county seized under said attachments as the property of the defendant, a considerable proportion of which is steel rails. The complaint in each case, as well as the affidavits on which the attachments issued, alleged that the defendant had property within this State.

"A suit was afterwards insituted by the National Bank of Augusta, Ga., against the defendant, in which it was adjudged that the defendant was insolvent and receivers were appointed. The receivers then moved, upon due notice, that an injunction be granted by this court, restraining these plaintiffs from proceeding to enforce their attachments. This motion was refused, the court holding that it would not interfere with or disturb the lien.

"After this the Pennsylvania Steel Company, upon due notice, moved to dismiss the complaints, because they did not show a cause of action, and also to vacate the attachments.

"The defendant likewise upon due notice moved to vacate the attachments.

"The position is taken by the plaintiffs that the Pennsylvania Steel Company has no right to make these motions, being no

party to the original proceedings.    Under the law of this State it has no such right.    Before the act of 1883, amending the Code in this particular, the only right that such a party had was to sue by independent proceedings for the recovery of the property ; but by that act a third party claiming the property attached, has a right to intervene and ask that an issue be framed to try the question of title.    But this act goes no further and does not authorize a motion to dismiss a complaint or to vacate an attachment.    Such a party must first establish its right to the property by a verdict upon the issue framed.    It would be hazardous to the rights acquired by the attaching creditors, and practically decide the title to the property without a trial by jury, and be depriving one of property without due process of law, to hold otherwise.    If this were permitted, by collusion between the claimant and the owner of the property attached, such a motion could be made, and if the attachment was dissolved, the property might be removed and the creditor defeated of his right without trial by jury, and the court deprived of jurisdiction of the subject matter of the action.    This claimant is entitled, however, to have an issue framed to determine its title to the property claimed.

"The second question is also jurisdictional.    It is contended that no cause of action is stated in the complaint and affidavit; that these being attachments by non residents against a non-resident corporation, the attachments must be vacated.    Section 423 of the Code is relied upon by the moving parties, and is as follows : 'An action against a corporation created by or under the laws of any other State, government, or country, may be brought in the Circuit Court: 1. By any resident of this State for any cause of action.    2. By a plaintiff not a resident of this State, when the cause of action shall have arisen, or the subject of action shall be situated, within this State.'

"It is urged by the creditors that this section is in contravention of art. IV., sec. 2, of the United States Constitution.    I hold that according to my interpretation of it, it is not repugnant to that section.    It is simply a regulation of the courts of this State, and a limitation put upon their jurisdiction as to non-residents.

"These causes of action arose out of the State, except that of Correll & Emonson, which, to a large extent, arose within this State, being for labor performed and on contracts made in the County of Greenville.

"These attachment proceedings must show that the subject of action is situated in this State and are similar to actions *in rem*. The court must have jurisdiction of the person of the party sued, or of the property of such party. Is the subject of action situated within this State ? The only object of the action is to subject the property seized to the payment of the debt, and in its nature resembles an action for possession of real or personal property, or the foreclosure of a mortgage. Its legal effect is exactly the same as if the plaintiffs alleged the property of the defendant to be within the jurisdiction of the court, and demanded judgment that such property should be subjected to the payment of the debt. Under our law a non-resident corporation has a standing in court to sue another non-resident corporation to subject its property to the payment of a debt, and such property is the subject of the action. To construe the statute otherwise, would be to enable a non-resident corporation to contract large debts with a creditor resident without this State, and then by removing all of its property to South Carolina, defeat all efforts of the creditor to reach that property through the process of the courts. If unable to bring suit in our courts to subject that property to the payment of the debt, the non-resident creditor would be entirely deprived of redress. Such a construction of the statute as that contended for by the moving parties would indeed be a violation of the constitution, as it would be an absolute denial of right to the citizen of another State.

"The court acquired jurisdiction *eo instanti* the property was seized under the attachment. It was the attachment which gave jurisdiction. No personal judgment is asked for, nor would be valid. It is against the property seized, and to the extent of the property only over which the court has acquired jurisdiction can judgment be rendered. This, then, is the subject of the action.

"The next matter is the claim of the Pennsylvania Steel Company to certain portions of the property seized. It asks that an issue be framed, that a jury may determine whether the property

claimed was at the time of seizure its property, that the creditors be the actors, and that all the claimants be required to come into the contest, so that one verdict may determine the question. Such an issue is therefore ordered, and all of the attaching creditors should contest the claim in this one proceeding in order to prevent multiplicity of suits, and they will all be entitled to be heard, both in testimony and argument. But the Pennsylvania Steel Company must be the actor. It is the affirmant. The property was found in the hands, and seized by the sheriff as the property of, the defendant. The attaching creditors may have no means of proving ownership except by the possession, whilst the claimant is presumed to be in possession of muniments of title, and it must therefore be the actor and entitled to open and reply.

"When this decision has been announced, the attorneys for the defendant, without any notice, stated that they appeared for the special purpose of making the following motion, to wit, that in each case the complaint should be dismissed, on the ground that the court has no jurisdiction of the action; that the complaint does not state facts sufficient to constitute a cause of action. This is really a motion to dismiss the complaint, though it is usually called an oral demurrer. Such a motion cannot be made until a party has a standing in court. A plea to the jurisdiction presupposes an appearance. But I overrule that motion as well as the motion to vacate the attachments. In an attachment proceeding, where the attachment papers, complaint, and affidavit, &c., are served with the summons, they form a part of the action and must be taken altogether, and if from all of them it should appear that the court has jurisdiction, it must be maintained. How far in its effect upon the other question of jurisdiction this appearance and plea may operate, I do not say, but it looks very much like an appearance in full in the cause.

"The order for an issue and the overruling of the motion to dismiss the complaints will also apply to the case *ex parte* the Pennsylvania Steel Company *in re* the National Bank of Greenville, S. C., *v.* the Georgia Construction and Investment Company.

"It is ordered, adjudged, and decreed, that the motions to va-

cate the attachments and the motions to dismiss the complaints be refused with costs, ten dollars in each case against each of the moving parties.

"It is further ordered, that the following issue be referred to a jury, to wit: At the time of the levy of the writs of attachments in the above stated cases, was the Pennsylvania Steel Company, which has herein intervened, the owner of the property claimed in its several petitions, or any part thereof? If so, what part?

"In this issue the company must be the actor and the attaching creditors the respondents, all in the same issue.

"It is further ordered, that on or before the first day August next the said intervening company do file with the clerk of the court security for the costs of this issue and of their proceedings therefor, and failing so to do that the petitions be dismissed."

This decree was filed on June 17, 1889, and court adjourned on the 22nd. On June 26 the defendant gave notice of appeal to the plaintiffs in each of the three first named of the above entitled cases; and on June 27, the Pennsylvania Steel Company gave notice of appeal with exceptions in all of the above cases.

DEFENDANT'S GROUNDS OF APPEAL. "1. Because his honor erred in refusing to discharge the warrants of attachment on the ground that they were irregularly issued, inasmuch as the affidavits upon which they were issued do not state causes of action, specifying the grounds thereof.

"2. Because he erred in refusing to discharge the warrants of attachment on the ground that they were irregularly issued, when it appeared that the affidavit upon which they were issued stated that the defendant was a foreign corporation, but failed to state that the cause of action arose in this State, or that the subject of action is situate in this State, or that the plaintiffs are residents of this State.

"3. Because he erred in holding that the property attached in a suit against a foreign corporation is the subject of the action within the meaning of section 423 of the Code.

"4. Because he erred in holding that if the attached property is not the subject of the action within the meaning of 423 of the

22 - 32

Code, then that section is in conflict with art. IV., sec. 2, of the Constitution of the United States.

"5. Because he erred in refusing to discharge the attachments on the ground that they were improvidently issued, inasmuch as the plaintiffs are non residents, and the defendant is a foreign corporation, and neither the cause of action arose in this State, nor is the subject of the action situate in this State.

"6. Because his honor erred in holding that a considerable part of the claim of Correll & Emonson arose in this State, it being submitted that such was not the case.

"7. Because he erred in holding that the attachment of Correll & Emonson would be valid if part of their claim arose in this State, it being submitted that the claim, as stated in the affidavit and complaint, is one and entire and is incapable of being divided, and differs materially from the cause of action as it now appears by affidavit.

"8. Because he erred in not discharging the levy and return in the case of J. W. Fletcher, as trustee, on the ground that said return is irregular and void, inasmuch as it appears from said return that the property attached belongs to the Carolina, Knoxville and Western Railway Company, and not to the defendant.

"9. Because he erred in refusing to dismiss the complaints herein on the ground that the court was without jurisdiction over the defendant to determine the causes of action.

"10. Because he erred in holding that the court has jurisdiction over an action brought by a non-resident against a foreign corporation upon a cause of action arising out of the State, if said corporation has property in this State at the time of suit."

The Pennsylvania Steel Company made the same exceptions and excepted also upon the following grounds:

"1. Because his honor erred in holding that the only object of these actions is to subject the property seized to the payment of the debts, and that these in their nature resemble actions for the possession of real or personal property or the foreclosure of a mortgage.

"2. Because he erred in holding that the legal effect of the action is exactly the same as if the plaintiffs alleged the property of the defendant to be within the jurisdiction of the court, and

demanded judgment that such property should be subjected to the payment of the debts.

"3. Because he erred in holding that the court acquired jurisdiction *eo instanti* the property was seized under the attachments in these cases, and that the attachments gave jurisdiction, and that no personal judgment is asked for in these cases.

"4. Because he erred in holding in actions brought by non-resident plaintiffs against a foreign corporation upon causes of action which arose without this State, and in which the causes of action are alleged to be debts due by note and contract, and the prayer for relief is simply for sums of money claimed to be due, that in such actions the property seized under warrants of attachment issued in such actions is the subject of action.

"5. Because he erred in holding that the property attached in aid of these actions was the subject of the actions.

"6. Because he erred in holding that the Pennsylvania Steel Company has no right to make these motions for dismissing the complaints.

"7. Because he erred in holding that the Pennsylvania Steel Company has no right to make the motions for dissolving the attachments.

"8. Because he erred in holding that the Pennsylvania Steel Company must first establish its right to the property claimed by a verdict of a jury upon issue framed before it can move to vacate the attachments.

"9. Because he erred in holding that the Pennsylvania Steel Company must first establish its right to the property claimed by a verdict of a jury upon issue framed, before it can move to dismiss the actions upon the ground of want of jurisdiction apparent on the face of the proceedings.

"10. Because he erred in holding that the Pennsylvania Steel Company must be the actor in the issue between it and the attaching creditors.

"11. Because he erred in framing the said issue as follows: 'At the time of the levy of the writs of attachment in the above stated cases, was the Pennsylvania Steel Company, which has intervened, the owner of the property claimed in its several petitions, or any part thereof?  If so, what part?'

"12. Because he erred in not framing the issue as follows: Was that portion of the property attached, or any part thereof, which has been claimed by the Pennsylvania Steel Company rightfully seized under said warrants of attachment? And in not holding that the affirmative of this issue be upon the attaching creditors."

*Messrs. Westmoreland & Haynsworth,* for defendant, appellant.

*Messrs. Barker, Gilliland & Fitzsimons,* for The Penn. Steel Co., appellant.

*Messrs. M. F. Ansel, John R. Bellinger,* and *Wells & Orr,* for respondents.

March 21, 1890.    The opinion of the court was delivered by

MR. JUSTICE McIVER.    The plaintiffs in the several cases above mentioned commenced their actions, on money demands, against the defendant company, and on the same day sued out warrants of attachment, under which the sheriff levied on and seized a considerable amount of personal property, consisting, to a large extent, of steel rails, found in this State, alleged to be the property of the defendant company.    In each of the cases, the Pennsylvania Steel Company intervened by petition, setting up a claim to the steel rails upon which the attachments had been levied, and asking that the same be adjudged to it, and the sheriff directed to deliver the same to the petitioner.    To these petitions, plaintiffs answered, denying the material allegations contained in the petitions, and averring that said steel rails were the property of the defendant company.    The defendant made no appearance to any of these actions, except as hereinafter stated, but, in each of the three cases first mentioned in the title, gave notice of a motion to vacate the attachments upon the several grounds set out in the "Case," which will hereinafter be considered.    In the fourth case, that of the National Bank of Greenville, no objection was made to the regularity of the proceedings therein, and, therefore, that case may be dismissed from our consideration until we come to consider one of the points raised by the appeal of the Pennsylvania Steel Company.

The motions on behalf of the defendant company, to vacate the attachments, were based upon the complaints and certain affidavits, all of which are set out in the "Case." The Pennsylvania Steel Company also gave notice of a motion to set aside the complaints, and that the attachments be dissolved, upon the ground that the court had no jurisdiction; and, failing in that, then that an issue be made up to try the question as to who had the right to the steel rails. These motions were heard by his honor, Judge Hudson, who having announced that he would refuse the motion to discharge the attachments, the attorneys for the defendant company, saying that they appeared only for this special purpose, moved the court, without previous notice, to dismiss the complaints in each of the three cases first named in the title, upon the ground that it appeared upon the face of the complaints that the court was without jurisdiction. This motion was likewise refused, and Judge Hudson filed his decree, giving the grounds for his refusal of the several motions to vacate the attachments and dismiss the complaints, but granting the motion of the Pennsylvania Steel Company to make up an issue to try the question of the title to the steel rails, directing that said company should be the actor in such issue. From this decree or order, the defendant company, as well as the Pennsylvania Steel Company, appeal upon the several grounds set out in the record, which need not be set out here, as they, together with copies of the complaints, affidavits, and notices of motions, together with the decree or order of Judge Hudson, should be embraced in the report of this case.

Section 423 of the Code provides that "an action against a corporation created by or under the laws of any other State, government, or country may be brought in the Circuit Court (1) by any resident of this State, for any cause of action; (2) by a plaintiff not a resident of this State, when the cause of action shall have arisen, or the subject of the action shall be situated, within this State." It seems to us very clear that the sole object of this provision was to limit the cases in which a non-resident plaintiff might sue a foreign corporation in the courts of this State to the two classes mentioned in the second subdivision of the section, viz., to cases in which the cause of action has arisen in this State, or to cases in which the subject of the action shall be situated

within this State.  The fact, that no express words of exclusion or limitation are used, cannot affect the question, for any other view would render the section wholly nugatory.  Why give a non-resident the right to sue a foreign corporation in certain specified cases, if such suit could be brought in any class of cases ?  And why the marked distinction between the right of a resident and a non-resident to sue a foreign corporation in the courts of this State, whereby the former is allowed to bring such suit in any case, while the latter can sue in two specified cases ?  It seems to us too plain for argument, that the effect of that section is to declare that a non resident can sue a foreign corporation only in the two cases specified, and hence, when such an action is brought, it cannot be maintained unless it appears either that the cause of action had arisen in this State, or that the subject of the action is situated within this State.  Now, as an action cannot, as formerly, be commenced by attachment, which is now only a provisional remedy in aid of an action, it follows, necessarily, that if the action fails for want of jurisdiction, the provisional remedy by attachment, in aid of such action, must fall with it.

: One of the counsel for respondent, however, contends that section 248 of the Code contains no limitation as to the character of persons, so far as residence is concerned, who may obtain the remedy by attachment, and, reading that section in connection with section 423, above quoted, there is no restriction upon the right of a non-resident to obtain an attachment against a foreign corporation in any case ; and certain language of this court, in the case of *Ex parte Dickinson in re Sheldon* v. *Blauvelt*, 29 S. C., 465, is quoted to sustain that view.  In the first place, it is not correct to say that there is no limitation in the terms of section 248, for the remedy there provided for is given only in cases where an action has been commenced ; meaning, of course, an action of which the court can take jurisdiction.  As to the quotation from *Sheldon* v. *Blauvelt*, it is, in fact, from the syllabus, and not from the opinion ; and the paragraph in the opinion from which the reporter, doubtless, extracted his syllabus, concludes in these words, speaking of the attachment law : "Its provisions seem to be broad enough to cover any one *who may be entitled to institute an action in the courts of this State*"—implying very

plainly, by the words now italicized, that an action legally instituted is a necessary condition precedent to the right to obtain an attachment, and hence, if a non-resident undertakes to institute an action against a foreign corporation, in which neither his cause of action arose within this State, nor is the subject of the action situated here, he is not entitled to obtain a warrant of attachment, because he is not entitled to institute such an action.

The Circuit Judge seems to have adopted our view of the scope and effect of section 423 of the Code, for he says: "These causes of action arose out of the State, except that of Correll & Emonson, which, to a large extent, arose within this State, being for labor performed, and contracts made, in the County of Greenville. These attachment proceedings must show that the subject of the action is situated within this State." And he then proceeds to consider the question whether the subjects of these actions were so situated, and reaches the conclusion that they were; that the subject of the actions was the property seized under the attachments.

The first and most material inquiry presented for our consideration is whether there was error in such conclusion. We think there was; for, whatever may be the precise definition of the words, "subject of the action," we do not see how it is possible for the property, upon which the warrants of attachment were levied (which, of course, was after the action was commenced), to be regarded as the subject of the actions. If so, then clearly, until the attachments were levied, there were no subjects of the action; and if there was no subject, then there was no action. But, again, it seems to us that nothing can be plainer than that the subject of the action must be described, or at least mentioned, in the complaint; and yet, in these complaints there is not, and could not be, the slightest allusion to that which is now claimed to be the subjects of the action. The subject of the action must necessarily be the subject of the complaint—the thing about which the plaintiff makes his complaint; and how that of which no mention is made in the complaint can be regarded as the subject of the action, it is impossible to conceive.

In these cases, the plaintiffs do not claim any right or title to, or interest in, the property upon which the attachments were

levied; but, on the contrary, their whole proceeding is based upon the theory that it belongs to the defendant company, and their sole object is, not to recover possession of that property, but simply to obtain a prior lien thereon.   Where a creditor sues his debtor, who owns a tract of land, upon an ordinary note, his object may be, and often is, simply to obtain a prior lien on the land, not to recover the land; and in such a case, it could not for a moment be pretended that the land was the subject of that action. Upon the same principle, we do not see how it is possible to regard the property upon which these attachments were levied as the subjects of the actions, in aid of which the attachments were issued.   These views are amply supported by the authorities cited in the arguments of the counsel for appellants.[1]

It is urged, however, that, under this construction of section 423 of the Code, such section would be in violation of several sections of the Constitution of the United States, to wit, section 2, art. 4; section 10, art. 1; as well as of section 15, art. 1, of the Constitution of this State.   It will be observed, that by the express terms of section 2, art. 4, of the Constitution of the United States, the privileges and immunities there secured are to the citizens of other States, and the provisions of the Code now under consideration relate only to residents—two different and distinct things—and hence there is no conflict.   But, as this question has been so recently considered by this court in the recent case of *Cummings* v. *Wingo* (31 S. C., 428), it is not necessary to do more than refer to that case, which we regard as decisive of this question.

How it can be said that the provisions of section 423 of the Code conflict with section 10, art. 1, of the Constitution of the United States, which forbids legislation impairing the obligation of contracts, it is difficult to understand.   The argument, as we understand it, is, that if the construction above indicated be adopted, then a foreign corporation, by transferring all of its property to this State, might secure absolute immunity from suit at

---

[1] The authorities so cited are *Chalmers* v. *Glenn*, 18 S. C., 471; 1 Pom. Eq. Jur., § 109; 2 Wait Prac., 131, 134; *Ex parte Dickinson*, 29 S. C., 465; *Cureton* v. *Dargan*, 16 *Id.*, 619; *Holmes* v. *Bank*, 18 *Id.*, 32; Code, §§ 148, 423, 284, 248; Drake Attach., § 228; 18 How., 218.—REPORTER.

the instance of its non-resident creditors, and thus the obligation of its contracts, made with such creditors beyond the limits of this State, would be not only impaired, but absolutely destroyed. In the first place, it may be answered that this result would flow, not from the legislation of this State, but from the acts of the one party and the omissions of the other. But, in addition to this, we are not prepared to admit that such a result as that apprehended would necessarily follow. It may be that, by proper allegations and proper proofs the non-resident creditor could show that the subject of the action was situated in this State; but in these cases, there are no such allegations and no such proofs.

Again, it is well settled that a corporation is the mere creature of the local law of the jurisdiction where it derives its existence, and has no absolute right of recognition, in any form, in any other jurisdiction. As is said by Mr. Justice Field in *Paul* v. *Virginia*, 8 Wall., at page 181: "The corporation, being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. * * * 'It must dwell in the place of its creation, and cannot migrate to another sovereignty.' The recognition of its existence even by other States, and the enforcements of its contracts made therein, depend purely upon the comity of those States—a comity which is never extended where the existence of the corporation, or the exercise of its powers, are prejudicial to their interests, or repugnant to their policy. Having no absolute right of recognition in other States, but depending for such recognition, and the enforcement of its contract, upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those States may think proper to impose." This utterance of the tribunal of last resort, in all questions involving the construction of the Constitution of the United States, shows conclusively that a State may make such regulations in regard to foreign corporations as it deems best; may either exclude them altogether, or may place such restrictions upon them as may be deemed best for the public welfare by the legislative department of the State.

Finally, it is contended that the view which we have adopted as to the construction of section 423 of the Code brings that section into conflict with section 15, art. 1, of the Constitution of

this State, which declares that "all courts shall be public; and every person, for any injury that he may receive in his lands, goods, person, or reputation, shall have remedy, by due course of law and justice, administered without unnecessary delay." In the first place, it may be said that in the actions now under consideration the plaintiffs are not seeking a remedy for any injuries received in their "lands, goods, person, or reputation," but they are simply seeking to enforce the performance of contracts. The actions are *ex contractu*, not *ex delicto*, and hence the section relied on has no application. But, in addition to this, it is very manifest that the object of that section was, not to so extend the jurisdiction of the courts of this State as to throw open their doors to any person, from any quarter of the globe, to demand redress for injuries received anywhere, but simply to secure to the inhabitants of the State, for which the constitution was made, access to the courts for redress of any injury which they may have received.

It is argued, however, that the question now under consideration is concluded by what was said in the case of *Bank* v. *Stelling*, 31 S. C., at pages 366–7. In that case, the action was for the purpose of setting aside certain alleged fraudulent deeds of land situate in this State; and, of course, those lands, which were the things sought to be affected by the action, were described in the complaint, and did constitute the subject of the action. To borrow the phrase of one of the counsel for appellants in this case, the lands there constituted "the theme of discourse" by the plaintiff in the complaint, and was the subject concerning which the action was brought. It is manifest that there is nothing in that case which lends any support to the view contended for here by counsel for respondents.

We think, therefore, that the Circuit Judge erred in holding that the property upon which the attachments were levied constituted the subjects of the action. From this, it follows that the judgment below must be reversed in the two cases first mentioned in the title, as there is no pretence that the cause of action in either of those two cases arose in this State.

In the third case, however, that of Correll & Emonson, it is contended that a part, at least, of the cause of action arose in this State, and the Circuit Judge has so found; and, therefore, the

next question to be considered is whether there was error in so holding. That question is somewhat a mixed question of law and fact; and, so far as the matter of fact is concerned, we are concluded by the finding below. These plaintiffs, in their complaint, state that they entered into a contract with the defendant company—where. is not stated—to do certain work on a railway extending from the city of Greenville, in this State, to the city of Knoxville, in the State of Tennessee; that, in pursuance of that contract, they did a large amount of work; and the complaint contains a bill of particulars, setting forth that a considerable amount of the work was done in this State; and in their affidavit, made for the purpose of procuring a warrant of attachment, they say that they have a cause of action against the defendant company for work and labor performed, and materials furnished for said company. At the hearing of the motion to vacate the attachments, other affidavits were submitted, both on the part of the plaintiffs and the defendant company, in which there was some conflict as to some of the facts, and in which it appeared that a part of the claim of the plaintiffs was evidenced by notes executed in this State, but where payable did not appear. Under this state of facts, we cannot say that the Circuit Judge erred in holding that the cause of action in this case, to a large extent, arose within this State; and hence this action, as well as the attachment, issued in aid thereof, may be sustained to the extent, at least, which these plaintiffs may be able to show at the trial, that they have a cause of action which arose in this State.

The objections urged by the appellants, that the affidavits in this case "do not state causes of action, specifying the grounds thereof," cannot be sustained. The contract under which the work was done—the fact that it was done, together with the bill of particulars accompanying the complaint—seems to be entirely sufficient.

It only remains to consider that part of the appeal of the Pennsylvania Steel Company which imputes error to the Circuit Judge in the manner of framing the issue ordered to try the right to the steel rails; and this, as we understand it, is the only branch of the appeal which affects the plaintiff in the case last mentioned in the title—the National Bank of Greenville *v.* the Georgia Con-

struction & Investment Company. The *gravamen* of this complaint seems to be, that the attaching creditors, instead of the Pennsylvania Steel Company, should have been made the actors in such issue. We do not think so. We must assume that the property in question was found in the possession of the defendant company, and was seized by the sheriff, under the attachments, as the property of that company, and when the Pennsylvania Steel Company intervened by petition, setting up a claim to that property, they stood like any other plaintiff who is seeking to recover possession of personal property which had passed out of his possession ; and that company was, therefore, properly made the actor in such issue.

The judgment of this court is, that the judgment of the Circuit Court, in so far as it refused the motion to vacate the attachments sued out by the Central Railroad & Banking Company of Georgia, and by J. W. Fletcher, as trustee under the deed of assignment of Brown & Fortune, be reversed, but in so far as it refused the motion to vacate the attachments issued at the instance of Correll & Emonson, the same be affirmed ; and it is further adjudged, that so much of said judgment as orders an issue to try the title to the steel rails, be so modified as to apply only to the cases of Correll & Emonson and the National Bank of Greenville against the Georgia Construction & Investment Company, and, as so modified, that the same be affirmed.