Rachel COLLINS, individually and as Administrator (Personal Representative) of the Estate of John Henry Collins, Plaintiff,

v.

R.J. REYNOLDS TOBACCO COMPANY and the American Tobacco Company, Defendants.

Civ. A. No. 3:94–1563–17.

United States District Court, D. South Carolina, Columbia Division.

Sept. 14, 1995.

William A. Wehunt, Jonesboro, Georgia, David E. Belding, Columbia, SC, for plaintiff.

Christopher J. Daniels, Steven A. McKelvey, Jr., Nelson, Mullins, Riley & Scarborough, Columbia, SC, Carl B. Epps, III, Elbert S. Dorn, Turner, Padget, Graham & Laney, Columbia, SC, for defendants.

### MEMORANDUM OPINION AND ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

In this products liability action, plaintiff alleges that her husband, John Henry Collins ("Collins"), developed emphysema and died from smoking "Camel" and "Salem" cigarettes manufactured by the defendant RJ Reynolds Tobacco Company ("Reynolds") and "Pall Mall" cigarettes manufactured by The American Tobacco Company ("American"). In her amended complaint, plaintiff asserts both wrongful death and survival actions based upon theories of strict liability, negligence and breach of implied warranty.

This matter is now before the court upon the defendants' motion for summary judgment. The court heard oral argument on August 15, 1995. At the conclusion of oral argument, the court announced that it was granting the motion for summary judgment on two separate grounds: (1) the court lacks subject matter jurisdiction over this action by virtue of the South Carolina "door-closing" statute, S.C.Code Ann. § 15–5–150; and

(2) plaintiff's claims are time-barred. This order memorializes the court's ruling.

### PROCEDURAL HISTORY

 The plaintiff commenced this action by filing her initial complaint on June 2, 1994. Service was effective on July 3, 1994.[1] The complaint invokes jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. On August 1, 1994, defendants filed a motion to dismiss for lack of subject matter jurisdiction and improper venue. In an Order dated October 24, 1994, this court, relying upon an affidavit of plaintiff Rachel Collins and the averments in the complaint, denied defendants' motion to dismiss. With permission of the court, plaintiff subsequently filed an amended complaint clarifying her claims for relief and setting forth causes of action for survival pursuant to S.C.Code Ann. § 15–5–90 and for wrongful death pursuant to S.C.Code Ann. § 15–51–10. On June 29, 1995, following depositions of plaintiff and her son, defendants filed this motion for summary judgment seeking dismissal of this action on three grounds: (1) that the court lacked jurisdiction under the South Carolina "door-closing" statute; (2) the survival and wrongful death actions were barred by limitations; and (3) the plaintiff lacked the proper capacity to sue.

### LEGAL STANDARD

 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those

facts." *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

 The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence in support of her claims. The nonmoving party—here the plaintiff—must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Viewed in the light most favorable to the plaintiff, the facts are as follows: The decedent Collins was a life-long resident of Georgia, and died on July 7, 1991 at St. Joseph's Hospital in Atlanta. Plaintiff herself is also a resident of Georgia and was appointed by the Dekalb County (Georgia) Probate Court as the administrator of Collins' estate.

Collins' medical records establish that he had a history of emphysema pre-dating his admission to Northside Hospital in Atlanta, Georgia on October 2, 1986. On October 3, 1986, Collins was advised by a treating physician to stop smoking because of poor pulmonary function tests. On February 25, 1987, Collins entered St. Joseph's Hospital in Atlanta due to chronic obstructive pulmonary disease (COPD) and again was advised to quit smoking. On April 24, 1987, Collins became permanently disabled and retired from his employment as an over-the-road truck driver due to his health problems.

---

1. A federal court sitting in diversity must follow state law in determining when an action is commenced for purposes of applying the statute of limitations. *Sunshine Sportswear and Electronics, Inc. v. WSOC Television, Inc.,* 738 F.Supp. 1499, 1511 (D.S.C.1989), *citing Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). Under South Carolina law,

an action is commenced by filing and service of the summons and complaint unless otherwise tolled. *Id.* at 1511; Rule 3(a), S.C.R.C.P. Although the use of the service date for determining when this action was commenced for limitations purposes is proper, the distinction is not critical because the result would be the same if the filing date were utilized.

The plaintiff, a licensed practical nurse for over thirty years, concedes that she had known since the 1960s of an alleged relationship between cigarette smoking and emphysema. Thus, in 1984—when the decedent was experiencing shortness of breath—the plaintiff advised him that his shortness of breath was due to smoking. Additionally, at the time Collins acknowledged his history of emphysema in 1986, one of the four rotational warning labels on cigarette packages sold in the United States expressly advised of a link between emphysema and smoking: "SURGEON GENERAL'S WARNING: Smoking causes lung cancer, heart disease, emphysema, and may complicate pregnancy." See Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 et seq., as amended.

Prior to his retirement, Collins' job as a truck driver entailed traveling across the United States. His young son, Dexter Collins, accompanied him during summers on trips throughout the country. Dexter's testimony reveals that Collins purchased cigarettes "pretty much everywhere" in the United States, from the Dakotas, Washington, and New Mexico to Florida, New York, Vermont and Maine. During his travels, Collins purchased several packs of cigarettes and sometimes as many as two or three cartons at one time. Dexter testified that his father purchased more cigarettes on the East Coast than in the West, but did not specify any particular state as a favorite for his purchases. Instead, Dexter Collins testified that he did not know of any differences in his father's purchasing habits between states. Dexter was unable to provide testimony based on personal knowledge that his father purchased more cigarettes in South Carolina than elsewhere. (See Fed.R.Evid. 602). He accompanied his father only three or four times to South Carolina, and conceded that they did not even stop in South Carolina on each of these trips. He could not specifically recall how many times his father bought cigarettes in South Carolina, or in what quantity. At most, he could say that his

father bought a total of up to six cartons of cigarettes in South Carolina. Dexter Collins and plaintiff both testified that the decedent purchased cigarettes in his home state of Georgia.

Plaintiff herself never saw Collins purchase cigarettes in South Carolina. She accompanied him during one visit in the 1960s to South Carolina but did not observe any cigarette purchases by her husband on that trip. On one occasion, plaintiff did observe one carton of her husband's cigarettes at home which carried a South Carolina tax stamp and was presumably purchased by her husband in this state. Plaintiff had no personal knowledge of any other cigarette purchases by her husband in South Carolina.

## DISCUSSION

### A. South Carolina Door–Closing Statute

 The South Carolina "door-closing" statute, S.C.Code § 15–5–150, provides in pertinent part:

> An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court ... [by] a plaintiff not a resident of this state when the cause of action shall have arisen or the subject of the action shall be situated within this state.

This statutory provision prohibits a non-resident from maintaining an action against a foreign corporation in a South Carolina court unless the cause of action arose in South Carolina or the subject of the action is located here. A federal court sitting in South Carolina, exercising diversity jurisdiction, must apply the "door-closing" statute unless there are "affirmative countervailing federal considerations" which override the application of the statute. Szantay v. Beech Aircraft Corporation, 349 F.2d 60 (4th Cir.1965); Proctor and Schwartz, Inc. v. Rollins, 634 F.2d 738 (4th Cir.1980); Bumgarder v. Keene Corp., 593 F.2d 572 (4th Cir.1979). There are no "affirmative countervailing federal considerations" presented by the plaintiff in this case.[2] Therefore, the case must be ana-

---

**2.** Unlike Szantay, where one of the defendants could only be served and joined in South Carolina, the plaintiff here could have brought suit against these defendants in Georgia or other jurisdictions where they conduct business and maintain sufficient minimum contacts. The

lyzed solely under the parameters of the door-closing statute itself. The plaintiff here has the burden of demonstrating that subject matter jurisdiction can be exercised over this action. *Felkel v. United States*, 861 F.Supp. 507, 509 (D.S.C.1994), *citing McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1935); *Sauders v. South Carolina Public Service Authority*, 856 F.Supp. 1066, 1069 (D.S.C.1994) (party asserting jurisdiction has the burden of proving that jurisdiction). *See also Fairfax Countywide Citizens Assoc. v. Fairfax County*, 571 F.2d 1299 (4th Cir.1978), *cert. den.*, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978) (burden of establishing jurisdiction is on the party claiming it).

The plaintiff is a Georgia resident. Likewise, the decedent, Collins, was a resident of Georgia. Both defendants are corporations "created by or under the laws" of states other than South Carolina.[3] Therefore, this action may be maintained in South Carolina only if "the cause of action shall have arisen or the subject of the action shall be situated within this state." Because there is no identifiable "subject" of this action, the only relevant inquiry for the court is whether plaintiff's causes of action arose in South Carolina.

As to this inquiry, there is no *genuine* issue of material fact to establish that the plaintiff's causes of action for survival and wrongful death arose in South Carolina. In her memorandum in opposition to defendants' motion, plaintiff argues that this court can exercise jurisdiction over her claims because Collins purchased cigarettes manufactured by defendants in South Carolina "on a frequent and regular basis" and that "the majority of the cigarettes consumed by the deceased were purchased in South Carolina." The record, however, is to the contrary. As the defendants have established through de-

position testimony, plaintiff can present proof, based on her own personal knowledge, of only one carton of cigarettes purchased by her husband in South Carolina. Through her son, Dexter Collins, the plaintiff can at most establish the purchase of approximately six more cartons of cigarettes in South Carolina. Far from showing that Collins purchased the majority or even a substantial portion of his cigarettes in South Carolina, the record shows that Collins purchased cigarettes all over the country. It also shows that Collins' purchases in South Carolina were no greater than in other states.

Plaintiff has attempted to create a factual dispute by referring to her deposition testimony that her husband purchased "almost all of his cigarettes in South Carolina because they were cheaper in South Carolina than in Georgia." Plaintiff had, however, already testified that this assertion (originally made in her affidavit opposing defendants' motion to dismiss) was not based on personal knowledge.[4] Instead, plaintiff testified at her deposition that she had no personal knowledge of *any* purchases by Collins in South Carolina other than the one carton which she observed in her home with the South Carolina tax stamp. Plaintiff also relies upon Dexter Collins' deposition statement that, "during the time that he [Collins] went to South Carolina with *or without me* he had purchased cigarettes." Dexter Collins testified, however, that he had no personal knowledge about claimed cigarette purchases by the decedent other than from traveling with him. Plaintiff may not rely upon her own assertions or on assertions by her son that are not based upon personal knowledge in order to avoid summary judgment. Rule 602 of the Federal Rules of Evidence provides that a witness "may not testify to a matter unless evidence is introduced suffi-

shorter two-year statute of limitations in Georgia may have impeded or prevented plaintiff's ability to bring suit there. However, "a plaintiff's failure to timely file suit in the more logical, convenient forum does not constitute a countervailing consideration favoring the exercise of federal jurisdiction." *Proctor and Schwartz*, 634 F.2d at 740.

**3.** Reynolds is a New Jersey corporation and American is a Delaware corporation.

**4.** At her deposition, plaintiff likewise retracted statements in her affidavit that she was with Collins "on numerous occasions in South Carolina when he would purchase … cigarettes by the carton" and that he would "smoke numerous cigarettes in South Carolina which had been purchased in South Carolina." (*Id.*, at 245–48).

cient to support a finding that the witness has personal knowledge of the matter." Nor can plaintiff rely upon what the decedent may have told her about where he purchased cigarettes in order to defeat a motion for summary judgment. Fed.R.Evid. 801(c), 802.[5]

The admissible, competent evidence shows that Collins did not purchase a substantial portion of his cigarettes in South Carolina as plaintiff alleges. Collins' South Carolina trips were few, and he did not purchase cigarettes on each trip to this state. The record further indicates that Collins purchased cigarettes literally all across the country, from Maine to California, and that the amount he purchased in South Carolina was no greater than the amounts he purchased anywhere else on the East Coast. Nor has plaintiff submitted any proof to substantiate her assertion that Collins' injuries were "directly connected" to his cigarette purchases in South Carolina.

Collins' history of cigarette purchases— particularly in view of all of the circumstances in this case—forecloses a finding that plaintiff's claims arose in South Carolina. Both plaintiff and Collins were lifelong residents of Georgia. He worked for a Georgia trucking company. He was diagnosed with emphysema and COPD, and was hospitalized and treated at hospitals in Atlanta, Georgia, not in South Carolina. Collins became permanently disabled and retired from his job in 1987 in Georgia, and died in Georgia on July 7, 1991. Because any cigarette purchases by Collins in South Carolina were incidental to his job as a truck driver and were minimal in nature, and because all of the remaining connections to plaintiff's claims are with Georgia, the court concludes that, for purposes of applying the door-closing statute, plaintiff's claims arose in Georgia, not in South Carolina.

This court finds support for its ruling in the case law interpreting the "door-closing" statute. Courts within this jurisdiction have found that the door-closing statute prevented pursuit of a wrongful death action by a non-resident against a foreign corporation where the death occurred in another state. *Bumgarder*, 593 F.2d at 573 (North Carolina plaintiff suing foreign corporations in federal district court in South Carolina over asbestos-related injuries sustained in North Carolina); *Proctor & Schwartz*, 634 F.2d at 740 (Georgia plaintiff suing Pennsylvania and New York defendants for Georgia injuries); *Nix v. Mercury Motor Express, Inc.*, 270 S.C. 477, 242 S.E.2d 683, 685 (1978) (non-resident suing in South Carolina over Virginia accident); *Parsons v. Uniroyal–Goodrich Tire Corp.*, 438 S.E.2d 238, 239 (S.C.1993) (non-resident suing in South Carolina over Georgia accident).[6]

Indeed, one test for determining where a cause of action arises is to ascertain where the delict or wrong has its *effect*. *Recreonics Corp. v. Aqua Pools, Inc.*, 638 F.Supp. 754, 758 (D.S.C.1986). Applying that standard here further demonstrates that both plaintiff's wrongful death and survival actions arose in Georgia, because the effects of Collins' illness and ensuing death were suffered in Georgia. With respect to plaintiff's wrongful death claim, the damages suffered by the family members such as "wounded feelings, grief and sorrow, loss of companionship, society and comfort of the deceased, and pecuniary loss," all occurred within the State of Georgia. *See*, S.C.Code Ann. § 15–51–10. With respect to plaintiff's survival claim, the damages suffered by the decedent such as pain and suffering, medical bills, and loss of income likewise occurred in Georgia.

---

5. Hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment. *Maryland Highways Contractors v. State of Maryland*, 933 F.2d 1246, 1251–52 (4th Cir.1991), *citing Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 973–74 n. 8 (4th Cir. 1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990); *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 570 n. 4 (7th Cir. 1989); *Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1319 (8th Cir.1986).

6. Death itself is the event which gives rise to a wrongful death action. *See Pringle v. United States*, 419 F.Supp. 289, 291 (D.S.C.1976); *Hemingway v. Shull*, 286 F.Supp. 243, 249 (D.S.C. 1968); *Miles v. Ashland Chemical Company*, 261 Ga. 726, 410 S.E.2d 290, 291 (1991). For this reason alone, the court could conclude that plaintiff's wrongful death action arose in Georgia but other factors support this conclusion as well.

*See,* S.C.Code Ann. § 15–5–90. Under this analysis, plaintiff's causes of action arose in Georgia, not South Carolina.

■■■ Additionally, the policies underlying the "door-closing" statute weigh against a finding that plaintiff's claims arose in South Carolina. The statute has two functions. First, it is intended to provide a forum for wrongs connected with the State while avoiding the resolution of wrongs in which the state has little interest. *Cox v. Lunsford,* 272 S.C. 527, 252 S.E.2d 918, 920 (1979). South Carolina has no discernible interest in the adjudication of plaintiff's claims, or in opening its courts to every person who has smoked cigarettes in a vehicle passing through the state or who stopped and purchased a few cartons of cigarettes in the state. The second purpose of the "door-closing" statute is to "encourage activity and investment within the State by foreign corporations without subjecting it to actions unrelated to its activity within the State." *Rosenthal v. Unarco Indus., Inc.,* 278 S.C. 420, 297 S.E.2d 638, 641 (1982). This second purpose would be undermined by the adjudication of plaintiff's claims in South Carolina, because commercial investment and activity in the state could be hindered by a finding of jurisdiction on the basis of such tenuous connections to the state.

For all of these reasons, the court concludes, as a matter of law, that plaintiff's causes of action did not arise in South Carolina. Accordingly, the "door-closing" statute, S.C.Code § 15–5–150, bars this action.

### B. *Statute of Limitations*

Even if jurisdiction were found to be present in this case, defendants are still entitled to summary judgment because both the sur-

vival and wrongful death actions are time-barred. As set forth above, Collins acknowledged on October 2, 1986 that he had a history of emphysema. The next day, he was advised by a doctor to refrain from smoking due to his poor pulmonary function tests. On February 25, 1987, Collins was again advised to quit smoking due to his lung condition.[7]

■■■ In ruling upon this aspect of defendants' motion, this court must determine which state's statute of limitations applies. A federal court sitting in diversity must apply the conflict of law provisions of the forum state if it does not violate due process to do so under the facts of the particular case. *Thornton v. Cessna Aircraft Co.,* 886 F.2d 85, 87 (4th Cir.1989). Under South Carolina choice of law principles, the substantive law is determined by the law of the state in which the injury occurred (*lex loci delicti*) and procedural matters by the law of the forum (*lex fori*). *Id.* Since statutes of limitation are traditionally viewed as procedural in nature, *id.* at 88, the South Carolina statute of limitations applies to plaintiff's survival action. This same rule, however, as explained below, dictates that the Georgia statute of limitations be applied to plaintiff's wrongful death action.

■■■ With respect to the survival action, under South Carolina law, Collins' personal injury action accrued on the date that he "knew or by the exercise of reasonable diligence should have known that he had a cause of action." S.C.Code Ann. § 15–3–535. South Carolina courts require an injured party to "act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and ex-

---

7. Plaintiff objects to defendants' reliance on Collins' medical records on the grounds that they are unauthenticated and constitute hearsay. At the hearing, it became clear to the court that plaintiff's sole challenge to the authenticity of the medical records was that they were not "signed". Plaintiff's assertions are incorrect. The record from Northside Hospital, dated October 2, 1986, is signed by an associate nurse, and the record dated October 3, 1986 is signed by a physician. The other record from St. Joseph's Hospital, dated February 25, 1987, is signed by a physician. In any event, a document need not be

signed to be authentic. *See* Fed.R.Evid. 901. Plaintiff could not enunciate any other reason why the authenticity of these records should not be accepted.

Plaintiff's argument that the documents are inadmissible because they are hearsay is also without merit. The information on these documents would be admissible at trial as statements made for the purpose of a medical diagnosis or treatment and as records of regularly conducted activity, under exceptions to the hearsay rule. Fed.R.Evid. 803(4), 803(6).

perience on notice that some right of his has been invaded or that some claim against another party might exist." *Snell v. Columbia Gun Exchange, Inc.*, 276 S.C. 301, 278 S.E.2d 333, 334 (1981) (plaintiff's cause of action accrued when pistol discharged causing injury, because injured party was placed on notice that defect in weapon was possible). *See also Quattlebaum v. Carey Canada, Inc.*, 685 F.Supp.. 939, 940 (D.S.C.1988) (plaintiff's cause of action accrued on date of diagnosis of asbestos-related disease); *Hinson v. Owens–Illinois, Inc.*, 677 F.Supp.. 406, 411 (D.S.C.1987) (plaintiff's cause of action accrued when he underwent a CT scan which revealed asbestosis).

Collins' personal injury action accrued at least by October 3, 1986 because on that date he was aware of his diagnosis of emphysema and was also aware that his injury might be related to his smoking. Plaintiff argues that there is a question of fact whether the decedent knew or reasonably should have known that his injuries were caused by smoking, but has submitted no facts to support that claim. Not only was Collins told by his doctors to stop smoking because of his lung disease, he was told by his wife that his shortness of breath was due to his smoking, and, at the time of his diagnosis, cigarette packages expressly warned that smoking caused emphysema. Under these circumstances, Collins was aware or should have been aware that he might have a claim for personal injury due to his smoking.

In 1986, South Carolina law provided for a six-year limitation period. *See* S.C.Code Ann. § 15–3–530(5). This six-year period began running at least by October 3, 1986 but was tolled for an eight month period following his death on July 7, 1991. *See* S.C.Code Ann. § 62–3–109. With the addition of the eight month tolling period, the limitations period expired six years and eight months from October 3, 1986—on June 3, 1993.[8] Because plaintiff did not commence this lawsuit until July 3, 1994, plaintiff's survival action is time-barred under South Carolina law.

■ With respect to the wrongful death action, the South Carolina Supreme Court has ruled that the Georgia statute of limitations is a substantive element of the Georgia wrongful death act and must be applied to a wrongful death action brought in South Carolina for a death occurring in Georgia. *Hughes v. Doe*, 281 S.C. 488, 316 S.E.2d 383, 385 (1984); *McDaniel v. McDaniel*, 243 S.C. 286, 133 S.E.2d 809, 812 (1963). *See also, Dennis v. Atlantic Coast Line R.R.*, 70 S.C. 254, 49 S.E. 869, 870 (1904) (North Carolina wrongful death statute and limitations applied to action filed in South Carolina arising out of death in North Carolina).[9] Thus, under South Carolina's conflict of law principles, the Georgia statute of limitations governs plaintiff's wrongful death action. Georgia law provides a two-year limitations period for a wrongful death action. Ga.Code Ann. § 9–3–33. Under Georgia law, a wrongful death action accrues upon death, and the limitations term cannot be expanded beyond the two-year period because the discovery rule does not apply to a wrongful death action. *Miles*, 410 S.E.2d at 291. Here, Collins died on July 7, 1991, and the Georgia statute of limitations expired on July 7, 1993. Since this lawsuit was not commenced until July 3, 1994, the plaintiff's wrongful death action is time-barred as a matter of law. For this reason, both the wrongful death and survival actions are barred by the governing statute of limitations.

**8.** The same result would ensue if Collins' subsequent hospitalization in February 25, 1987 is utilized as the date when Collins should have been aware of a possible cause of action. The statute of limitations, plus the tolling provision, would have expired on October 25, 1993.

**9.** The defendants correctly point out that plaintiff has improperly alleged a claim under the South Carolina wrongful death act because neither the decedent's injuries nor death occurred in South Carolina. Even though the case is brought in South Carolina, the Georgia wrongful death statute applies. *See McDaniel*, 133 S.E.2d at 812 (Georgia wrongful death statute governs action filed in South Carolina for death that occurred in Georgia); *Anderson v. Lane*, 97 F.Supp. 265 (D.S.C.1951) (same). *See also Liberty Corp. v. NCNB National Bank of South Carolina*, 786 F.Supp. 552 (D.S.C.1992) (North Carolina wrongful death act applied to action filed in South Carolina arising out of death in North Carolina).

This court does not have jurisdiction to entertain this action pursuant to S.C.Code Ann. § 15–5–150. In the alternative, this action is barred by the governing statutes of limitations.[10] Therefore, defendants' motion for summary judgment is hereby granted, and the case is dismissed.

IT IS SO ORDERED.

10. The court need not address the defendants' additional argument that the plaintiff lacks the capacity to bring this action.