13123

OPHULS & HILL, INC., v. CAROLINA ICE & FUEL CO.

(158 S. E., 824)

October, 1930.

*Messrs. Samuel Want* and *Jerome F. Pate*, for appellant,

*Messrs. Dargan & Paulling* and *Buist & Buist,* for respondent,

April 16, 1931.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This is an action by a New York corporation against a Delaware corporation brought in a Court of South Carolina. Whilst the defendant is incorporated under and by the laws of the State of Delaware, it has places of business in Darlington and Marlboro Counties, S. C., and possibly elsewhere in this State.

The complaint alleges, in substance, the facts above stated, and these further facts: That on April 30, 1929, the plaintiff, acting through its agent, E. R. Bagnoli, entered into a contract with W. E. Vogelback & Company, acting through

its authorized representative, Fred D. Ellis, which contract provided for certain payments to the plaintiff in connection with the acquisition of certain ice manufacturing properties in South and North Carolina. Plaintiff is informed and believes that W. E. Vogelback & Company, in executing this contract, acted as agents for the defendant, or, by some other arrangement between W. E. Vogelback & Company and the defendant, the latter became substituted for Vogelback & Company in the contract, received its benefits, and undertook the performance of the duties imposed upon W. E. Vogelback & Company by the terms of the contract. Plaintiff alleges of its own knowledge that under and by virtue of said arrangement, defendant became the purchaser of certain ice manufacturing properties in North and South Carolina and was the recipient of the benefit of the services of the plaintiff in respect thereto. That, further, on the 1st day of July, 1929, the defendant, for valuable consideration, made and delivered to the plaintiff, its three promissory notes as follows: (1) For $6,850, due April 30, 1930; (1) for $5,000.00, due November 1, 1929; (1) for $1,000.00, due December 1, 1929. Each of these notes bears interest at the rate of 7 per cent. The complaint sets out certain payments on one of the notes and demands judgment for the aggregate amount due on the three. Attached to the complaint as exhibits as a part thereof are the contract Exhibit A, and the notes Exhibits B, C, and D. The complaint styles the contract "the Darlington contract," and for convenience we will adopt that designation of it.

At the time of the commencement of the action by the service of the summons and complaint, plaintiff procured to be issued warrants of attachment upon properties of the defendant at Darlington, S. C., and some point in Marlboro County, S. C. Presumably these are the ice plant properties with the acquisition of which the plaintiff was connected. Defendant moved to vacate the attachments, and at the same time demurred to the complaint. The action taken and the

grounds therefor are thus concisely and clearly stated by appellant in its brief for the hearing of this appeal: "The Appellant appeared specially in the Circuit Court for the sole purpose of challenging the jurisdiction of the Court. This challenge was expressed in a motion to vacate and dissolve the warrant of attachment on the ground that the same was improvidently issued, in that the cause of action was not one that had arisen in the State of South Carolina, and that it did not relate to subject matter situated within the said State. At the same time, and under the same special appearance, the Appellant demurred to the complaint, raising the same jurisdictional issues."

The motion and demurrer were heard by Judge Grimball, then presiding in the Fourth Circuit, who, in a short order, denied the motion and overruled the demurrer.

The appeal is from that order. It is essential to the intelligent consideration and determination of the issues involved in the appeal that certain primary facts be stated and kept in mind.

The contract, attached to the complaint as Exhibit A, shows that it was signed by plaintiff in this wise: "Ophuls & Hill, Inc., by E. R. Bagnoli, authorized representative," and the other party in this way: "W. E. Vogelback and Company, by Fred D. Ellis." Fred D. Ellis is the president of the defendant company—appellant here—and it appears from his affidavit set out in the record that he handled the transaction referred to in the complaint on the part of Carolina Ice & Fuel Company. It is admitted that the contract (the Darlington contract) is a South Carolina contract. It is admitted, in argument, that the notes attached to the complaint were executed either in New York, or Illinois, and are made payable at Chicago, in the last-named State. For convenience of reference, one of them is here set out.

"Amount Six Thousand Eight Hundred and fifty and No/100 Dollars ($6,850.00). On or before April 30, 1930, we promise to pay at the Central Trust Company of Chicago,

Illinois, to the order of Ophuls & Hill, Inc., Six Thousand Eight Hundred fifty & No/100 Dollars ($6,850.00), subject to the terms and conditions of that certain contract dated April 30, 1929, between Ophuls & Hill, Inc., by E. R. Bagnoli and W. E. Vogelback & Company by Fred D. Ellis, said W. E. Vogelback & Company acting as agents for Carolina Ice & Fuel Company, *payable at Chicago, Illinois,* to the order of Ophuls & Hill, Inc., Value Received With interest at rate of 7 per cent. per annum."

> "Carolina Ice & Fuel Company,
> "By FRED D. ELLIS."

"Dated July 1, 1929."

This appeal is from the order of Judge Grimball denying the motion to vacate the attachment, and overruling the demurrer to the complaint. It is grounded upon four exceptions, which charge error to the Circuit Judge, because: It appears upon the face of the complaint, the exhibits, and the affidavit upon which the warrant of attachment was issued that the Court is without jurisdiction to entertain the case; that it affirmatively appears that this is a suit by a foreign corporation, against a foreign corporation brought in the Circuit Court of this State; and that it does not affirmatively appear from the complaint and the exhibits that the Court has jurisdiction. In short, that the cause of action set forth in the complaint and the affidavit upon which the warrant of attachment was issued is not one brought by a resident of the State, or upon a cause of action that has arisen in this State, or in respect to a subject matter situate within this State. Stated in another way, appellant's contention is that the cause of action is the notes, which admittedly were made in a foreign State and are payable in a foreign State; that the cause of action is not the contract because there are no appropriate allegations in the complaint upon which to predicate such action. But, if it be claimed that the action is founded on the contract, it cannot be maintained for the reason that there has been a novation by the substitution of

the notes for the contract. On the same grounds the attachment is attacked. If the complaint cannot stand, necessarily the attachment must fall.

The questions for consideration then are: Cause of action; subject of action; novation.

The section of the Code under which the action is brought is in this language:

Section 774, Code Civil Procedure: "Where And By Whom Action Brought.—An action against a corporation created by or under the laws of any other State, Government, or Country may be brought in the Circuit Court:

"1. By any resident of this State, for any cause of action.

"2. By a plaintiff not a resident of this State when the cause of action shall have arisen, or the subject of the action shall be situated, within this State."

The appellant's burden of contention is that the cause of action sought to be set up in the complaint is the notes. It argues its contention with ability and ingenuity. With equal ability and plausibility the respondent contends that the contract is the cause of action. Each of them cites many authorities. It appears to the Court that the question is determined by a few leading cases of our own Courts, and it seems a work of supererogation to encumber the opinion with a great number of citations.

For the purpose of the demurrer the allegations of the complaint are admitted to be true.

In our own reports is a case the facts and legal principles of which are in striking analogy with the case at bar, and the conclusions therein announced bear directly upon the question here involved, viz.: Are the notes or the contract the cause of action?

It is the case of *Central Railroad & Banking Co. v. Georgia, etc., Co.,* 32 S. C., 319, 11 S. E., 192, 203. The opinion is by Mr. Associate Justice, afterwards Chief Justice, McIver, a jurist of such eminent ability and with such profound knowledge of the law that his opinions are every-

where accepted with confidence. They carry conviction. There were in that case several cases against the same defendant consolidated for hearing. One of the actions was by Correll & Emonson. The extract from the opinion clearly states their cause of complaint, and the facts involved which show the similarity in principle between that case and this, quoting:

"In the third case, however, that of Correll & Emonson, it is contended that a part, at least, of the cause of action arose in this State, and the Circuit Judge has so found; and therefore the next question to be considered is whether there was error in so holding. That question is somewhat a mixed question of law and fact; and, so far as the matter of fact is concerned, we are concluded by the finding below. These plaintiffs, in their complaint, State that they entered into a contract with the defendant company—where is not stated— to do certain work on a railway extending from the City of Greenville, in this State, to the City of Knoxville, in the State of Tennessee; that, in pursuance of that contract they did a large amount of work; and the complaint contains a bill of particulars setting forth that a considerable amount of the work was done in this State; and, in their affidavit made for the purpose of procuring a warrant of attachment, they say that they have a cause of action against the defendant company for work and labor performed, and materials furnished for said company. At the hearing of the motion to vacate the attachments, other affidavits were submitted both on the part of the plaintiffs and the defendant company, in which there was some conflict as to some of the facts, and in which it appeared that a part of the claim of the plaintiffs was evidenced by notes executed in this State, but where payable did not appear. Under this state of facts, we cannot say that the Circuit Judge erred in holding that the cause of action  *  *  *  to a large extent, arose within this State; and hence this action, as well as the attachment, issued in aid thereof, may be sustained to the extent, at

least, which these plaintiffs may be able to show at the trial, that they have a cause of action which arose in this State.

"The objections urged by the appellants that the affidavits in this case 'do not state causes of action, specifying the grounds thereof,' *cannot be sustained. The contract under which the work was done—the fact that it was done, together with the bill of particulars accompanying the complaint—seems to be entirely sufficient.*" (Italics ours.)

The complaint in the case at bar sets out the contract and shows that work was done under it, in this State, of which defendant got the benefit; it sets out the notes given in evidence of the defendant's obligation to pay; the contract was made in this State; it is admitted to be a South Carolina contract. The affidavit upon which the warrant of attachment was issued sets out that a cause of action exists in favor of the plaintiff against the defendants, in connection with and growing out of a contract made at Darlington, S. C., for the sale and purchase of certain ice manufacturing properties at Darlington, S. C., and elsewhere. In the language of Mr. Justice McIver, this "seems to be entirely sufficient."

The cited case had a sequel in the case of *Correll v. Georgia, etc., Co.,* found in 37 S. C., 444, 16 S. E., 156, 159. From the opinion in that case we take this : "We agree with the Circuit Judge that the contract of removal from North to South Carolina was to be completed  *  *  *  in this State, and therefore was a South Carolina contract, which was due and owing at the time the action was brought, and, therefore, capable of sustaining a verdict to the amount of it." Which seems to mean that the contract was a cause of action which arose in this State and would, therefore, sustain the action.

Throughout the argument of counsel for appellant, the effort is made to confine the consideration of the cause of action to the notes. They argue that the action is not founded on the contract, because there are no ap-

propriate allegations in the complaint to show that the plaintiff plants the action on the contract.

We think there are allegations "entirely sufficient." With meticulous care the plaintiff sets out the contract, the nature of the services performed by it, the benefits of which services the defendant got, and the failure of the defendant to perform its part of the contract. If the cause of action is the notes, why was it not sufficient for plaintiff to allege the making and delivery of the notes for valuable consideration, and the failure to pay? Why set out the whole contract? But plaintiff contends that if it be held that the contract is not *the cause of action* (which conclusion it does not assent to), nevertheless, the action, and the attachment issued in aid thereof, may be sustained on the ground that *the subject of the action* is situated within this State.

Many attempts to differentiate the meaning of the terms "cause of action" and "subject of action" occur in the law books. None of them more clearly states that difference than does Bliss on Code Pleading (3rd Ed.), 214, quoted with approval in our case of *Columbia National Bank v. Rizer*, 153 S. C., at page 55, 150 S. E., 316, 320, 68 A. L. R., 443: "The *cause of action* has been described as being a legal wrong threatened or committed against the complaining party; and the *object of the action* is to prevent or redress the wrong by obtaining some legal relief. The *subject of the action* is, clearly, neither of these; it is not the wrong which gives the plaintiff the right to ask the interposition of the Court, nor is it that which the Court is asked to do for him, but it must be *the matter or thing, differing both from the wrong and the relief, in regard to which the controversy has arisen, concerning which the wrong has been done; and this is, ordinarily, the property, or the contract and its subject-matter,* or other thing involved in the dispute." (Italics added by us.)

Another clear and succinct definition of the words "subject of the action" is found in the case of *Humbert v. Brisbane,*

25 S. C., 506; we quote: "Exactly what is meant by the words, 'subject of the action,' as used in the Code does not seem to be very clearly defined in any judicial decision which has come under out notice. Mr. Pomeroy, who is regarded as a standard authority in the construction of the Code, in his valuable work on Remedies, at page 800, Section 775, after stating some of the different constructions which have been placed upon these words, uses this language: 'It would, as it seems to me, be correct to say in all cases, legal or equitable, that the "subject of the action" is the plaintiff's main primary right which has been broken, and by means of whose breach a remedial right arises.' "     .

In the present case, the foundation, and the beginning point, of the relations between the plaintiff and the defendant, is the Darlington contract, by the terms of which they undertook reciprocal obligations. The complaint alleges that plaintiff has performed its part of these obligations, and that defendant has failed to perform its part; it was plaintiff's primary right to have defendant perform these obligations; a failure to do so is a breach which furnishes the plaintiff a remedial right, which, by this action, it asks the Court to enforce. Plaintiff alleges that its complaint sufficiently sets forth this breach as the subject of the action. We think the contention is sound.

But defendant argues that the action may not be maintained on the contract as the subject of the action because there has been a novation—a substitution of the notes for the contract. If this be so, then the contract is neither the *cause of action,* nor *the subject of the action,* and the suit would fail, and with it would fall the attachment.

Let us see if there has been a novation.

"A novation may be broadly defined as a substitution of a new obligation for an old one, which is thereby extinguished. More specifically, novation is the substitution by *mutual agreement,* of one debtor or one creditor, for another, whereby the old debt is extinguished, or the substitution of

a new debt, or obligation for an existing one, which is thereby extinguished. It is a mode of extinguishing one obligation by another; the substitution, *not of a new paper, or note, but of a new obligation* in lieu of an old one—the effect of which is to pay, dissolve, or otherwise discharge it." (Italics added.) 46 Corpus Juris, pp. 573, 574.

"Novation may be effected in three ways; (1) By the substitution of a new obligation between the same parties, *with intent to extinguish the old obligation.* (2) By the substitution of a new debtor in place of the old one, *with intent to release the latter.* (3) By the substitution of a new creditor in the place of an old one, *with intent to transfer the rights of the latter to the former."* (Italics added.) 46 Corpus Juris, p. 575.

"Novation exists only by reason of *an agreement and in the absence of such an agreement there can be no novation* of the character now under consideration. Hence, in order to effect a novation by the substitution of a new obligation between the same parties *there must appear the consent of both contracting parties* that the new agreement is to have this effect. *The sole intention of the obligor that the existing contract should be discharged by the new agreement is not sufficient; the creditor must concur in this."* (Italics added.)

"Both novation and the relation of principal and surety depend upon the same facts—*the consent* of the mortgagee to release the mortgagor and look only to his grantee." *Scott v. Stone,* 149 S. C., 386, 147 S. E., 449, 454.

"It appears to be settled by the case of *Callaham v. Ridgeway,* 138 S. C., 10, 135 S. E., 646, that: '*An agreement consented to* by a mortgagee, whereby the grantee of the mortgaged premises assumed payment of the mortgage note as a part of the purchase money, constitutes a novation which discharges the original mortgagor and renders the grantee the sole debtor.'

"The facts of this case [*Scott v. Stone*] do not bring it within that rule. In the *Callaham case* it was found as a fact

that Callaham, *upon an agreement for valuable consideration,* obligated himself to release Ridgeway, the mortgagor, and look only to the grantee of Ridgeway. There is no such agreement shown in the case at bar, and all the evidence tends to negative that fact." (Italics added.) *Scott v. Stone, supra.*

■ Free use has been made of italics in copying all of the above citations on the subject of novation, for the reason that two affidavits appear in the record, bearing on this subject, which are directly contradictory of each other, and there is no other evidence in the record on this subject, and it is important to show that in order to effect a novation there must be an agreement between the parties.

Fred D. Ellis, the president of defendant company, in an affidavit set out in the record, makes this statement: "The notes were made, issued and delivered at the request of the plaintiff in this case in satisfaction of the obligation described in the aforesaid contract marked 'Exhibit A.'" Clearly that affidavt was prepared and executed in support of the plea of novation. In reply to it Halbert T. Hill, vice-president and treasurer of plaintiff, makes affidavit to this effect: "I deny that the notes described in the complaint were made, issued and delivered at the request of the plaintiff in this case in satisfaction of the obligation described in the aforesaid contract,' as alleged by Mr. Ellis, and I allege that said notes were accepted by the plaintiff not in payment or satisfaction but in acknowledgment of the debt due and to become due to the plaintiff under the terms of said agreement."

■■ When it is remembered that the contract was made between plaintiff and W. E. Vogelback & Company, and that the name of the defendant does not appear in the transaction until the notes are given, and that the notes specifically state that W. E. Vogelback & Company were agents of the defendant in making the contract, the

logical inference is that plaintiff accepted the notes as acknowledgment by the defendant that it was the real party in interest represented by Vogelback & Company in the contract, and that it assumed the obligations thereof. Certainly there is no satisfactory proof of an agreement that the notes be accepted in lieu of the obligation of the contract, and the internal evidence is against the contention. The burden is on him who pleads novation to prove that it was effected by the agreement of both parties. The defendant has not so sustained its plea.

"A debt is a legal obligation to pay money. This contract can only be discharged by the payment of money, or by a new contract in relation to the same subject matter by which it is agreed that something else than money will be given and received in discharge of the contract. * * * The burden of proving this new contract is upon him who affirms it. * * * It is not proved by the mere fact that one note is given for another." *Union Bank v. Wando Min. & Mfg. Co.*, 17 S. C., 339.

"An order upon a third party for the payment of money which has not been paid or accepted is not a payment of a precedent debt." *Carolina-Portland Cement Co. v. Calhoun*, 158 S. C., page 365, 155 S. E., 151, 152 and cases therein cited.

We take this statement from the brief of respondent's counsel: "However, aside from the general law on the effect of acceptance of notes for indebtedness becoming due on a contract, these notes are peculiar in form in that each of them contains the words 'subject to the terms and conditions of that certain contract dated April 30, 1929, etc.' This wording clearly shows that the giving of the notes did not constitute a new transaction independent of what had gone before, but each note by wording, carefully inserted by the maker, who is now the appellant, was tied into the contract, and its payment expressly made subject to the terms and conditions of the contract. It is difficult to conceive of any

method by which the appellant could with greater clarity have indicated its intention that the giving of the notes was not a new transaction but was merely a part and parcel of the performance of the contract, and that the payment of the notes was dependent upon the performance of the contract by the other party thereto."

The Court is impressed with this clear and concise statement of the issues, and concurs in its conclusions.

Counsel for appellant in their brief make this statement: "At the hearing in the Circuit Court counsel for appellant and respondent expressed agreement upon the proposition that the present action is not maintainable unless *the cause of action* set forth in complaint is a cause of action that arose within the State within the meaning of the Statute above referred to. In other words they agreed that there is no "subject of the action within this State." In reply to this, counsel for respondent say: "The record contains no such statement. * * * However, going outside the record, the written briefs, or memoranda submitted by counsel on both sides to the Circuit Judge, contain no reference to any such agreement. Moreover, it is the recollection of counsel for the appellee (Mr. Dargan), who argued the matter before the Circuit Judge, that there was no such agreement at any stage of the hearing. On the contrary, the appellee conceives, and has always conceived, that the subject of action is situated within this State, and sets out the reasons for this (in this) brief, *infra*."

The agreement does not appear in the record, and is not in writing, as is required by the rule; hence the Court cannot take cognizance of it.

The action is maintainable on either or both of the grounds allowed by the statute; on the cause of action which arose in this State, to wit, the services rendered in this State under the terms of the contract; on the subject of the action which is the contract—admittedly a South Carolina contract —situated in this State. A contract is not the paper writing

—that is, the evidence of the contract—the tangible thing which shows the terms, conditions, and obligations upon which the minds of the contracting parties meet. This is the subject of the action.

We find no error in the order of the Circuit Judge denying the motion to vacate and dissolve the attachment, and overruling the demurrer to the complaint.

The appeal is dismissed, and the order appealed from is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.