550 S.E.2d 589

Janet B. MURPHY and David M. Murphy, Appellants,

v.

OWENS–CORNING FIBERGLAS CORP., Pittsburgh Corning Corporation, ACandS, Inc., Rock Wool Manufacturing Co., Inc., The Anchor Packing Company, Rapid American Corporation, Garlock, Inc., Westinghouse Electric Corporation, Uniroyal, Inc., PPG Industries, Inc., Covil Corporation, E.I. Du Pont de Nemours and Company, Defendants,

Of whom Rapid American Corporation and E.I. Du Pont de Nemours and Company are, Respondents.

No. 3354.

Court of Appeals of South Carolina.

Heard Nov. 7, 2000.

Decided June 11, 2001.

Rehearing Denied Aug. 24, 2001.

38

L. Joel Chastain and William J. Cook, both of Ness, Motley, Loadholt, Richardson & Poole, of Barnwell; and Jeffrey T.

Eddy, of Ness, Motley, Loadholt, Richardson & Poole, of Charleston, for appellants.

Ivan A. Gustafon and Christopher G. Conley, of Blasingame, Burch, Garrard, Bryant & Ashley, of Athens, GA; Jackson L. Barwick, Jr., Valerie Palmer Williams, of Holmes & Thompson; and David E. Dukes, C. Mitchell Brown and Michael W. Hogue, all of Nelson Mullins, Riley & Scarborough, all of Columbia; and Carl E. Pierce, II, of Charleston, for respondents.

Amicus Curiae on Behalf of Owens–Illinois, Inc., R. Bruce Shaw and William C. Wood, Jr., both of Nelson, Mullins, Riley & Scarborough, of Columbia.

KITTREDGE, Acting Judge:

Janet Murphy, a resident of Virginia, brought this action alleging she developed mesothelioma as a result of exposure to asbestos fiber trapped in the clothing of her father, Dr. Charles Baker, while he worked for E.I. Du Pont de Nemours at several locations, including the facility located in Camden, South Carolina. The trial court granted the respondents' motion to dismiss for lack of subject matter jurisdiction based upon the Door Closing Statute.[1] Murphy and her husband appeal.[2] We reverse and remand.[3]

## FACTUAL/PROCEDURAL BACKGOUND

Janet B. Murphy and David M. Murphy, who are wife and husband, brought this action seeking damages for injuries that they sustained after Janet developed mesothelioma from an

---

1. S.C.Code Ann. § 15–5–150 (1976); *see also Nix v. Mercury Motor Express, Inc.*, 270 S.C. 477, 242 S.E.2d 683 (1978) (holding that the application of the Door Closing Statute is a question of subject matter jurisdiction).

2. Janet's husband, David Murphy, claims loss of consortium.

3. This case was originally heard by a panel of this court, which issued an opinion affirming the trial court's dismissal of the Murphys' claims. *See Murphy v. Owens–Corning Fiberglas Corp.*, Op. No. 3203 (S.C. Ct.App. filed June 26, 2000). On October 5, 2000, the full Court of Appeals voted to rehear the case en banc pursuant to S.C.Code Ann. section 14–8–90 (Supp.2000). Accordingly, the original panel opinion is hereby withdrawn and the following opinion substituted therefor.

alleged household exposure to asbestos. The Murphys allege Janet developed the disease as a result of inhaling asbestos fibers trapped in her father's clothing. From 1966 to 1969, Janet was a resident of South Carolina while her father, Dr. Charles Baker, worked for E.I. Du Pont de Nemours at its facility in Camden. Before and after that time, he worked at other Du Pont facilities in Virginia and Europe. Dr. Baker testified by deposition, however, that he was exposed to more asbestos in Camden than in the other locations.

Dr. Baker stated that one of his major projects at the Camden plant was the development of a larger, higher capacity spinning cell for spinning Orlon acrylic fiber. He stated that the equipment involved in the spinning process was continually reconfigured which exposed him to insulation material while he observed the removal and re-installation of the equipment. He was also exposed to asbestos in other areas of the Camden plant where various equipment changes were taking place. Dr. Baker stated there was always evidence of some dust in the area and he specifically recalled times when his clothes were dusty.

Janet, born in 1960, lived at home with her parents until she entered college in 1978. In 1982 she moved to Virginia where her condition was eventually diagnosed.[4] Shortly thereafter, Dr. Baker came to believe he had exposed his daughter to asbestos through his clothing. He held her as an infant and maintained a close relationship with her as she grew. Janet testified in her deposition that she would routinely crawl into his lap when he returned home from work and they would read stories or watch television.

Dr. Victor L. Roggli, a board certified pathologist with extensive experience with asbestos related diseases, examined Janet's tissue specimens, medical records, and exposure history. In an affidavit submitted to the court, he concluded: "Janet Murphy's exposure to the asbestos fibers in her father's clothes while he was employed by Du Pont at the Camden, South Carolina facility from January 1966 to July 1969 was a proximate cause of the development of [her]

---

4. Janet Murphy was diagnosed with mesothelioma in July, 1995. As a result of the disease, Janet died during the seven months that followed expedited oral argument.

mesothelioma in that these Camden, South Carolina exposures significantly contributed to the development of her mesothelioma." Dr. Roggli also stated that Janet's "Camden, S.C. exposure from January 1966 to July 1969 was sufficient, in and of itself, to have caused mesothelioma."

The respondents moved to dismiss the action, asserting the circuit court lacked subject matter jurisdiction over the Murphys' complaint based upon the application of the Door Closing Statute. The trial court agreed and dismissed the Murphys' claims, finding that the South Carolina Door Closing Statute restricted its subject matter jurisdiction "for claims brought by non-resident plaintiffs against non-resident defendants to causes of action that shall have arisen in this state," and further that the Murphys' action did not arise in South Carolina because the injury-the impairment from the development of mesothelioma-was diagnosed in Virginia. This appeal followed.

## STANDARD OF REVIEW

 This is an appeal from the grant of a motion to dismiss for lack of subject matter jurisdiction. The question of subject matter jurisdiction is a question of law for the court. *Woodard v. Westvaco Corp.*, 315 S.C. 329, 433 S.E.2d 890 (Ct.App.1993), *vacated on other grounds by,* 319 S.C. 240, 460 S.E.2d 392 (1995). In determining whether to dismiss based on lack of jurisdiction, the court may consider "affidavits and other evidence outside the pleadings ..." without converting the motion into one for summary judgment. *Baird v. Charleston County,* 333 S.C. 519, 529, 511 S.E.2d 69, 74 (1999).

## DISCUSSION

### I.

As a preliminary matter, the respondents contend the order of the circuit court is not immediately appealable because the Murphys' claims against one defendant still remain. The trial court did not grant the motion to dismiss with respect to Covil Corporation because it is a South Carolina corporation.

The respondents rely upon *State ex rel. McLeod v. C & L Corp.,* 280 S.C. 519, 313 S.E.2d 334 (Ct.App.1984), in support

of their argument. In that case, the trial court granted summary judgment to two defendants during the course of the proceedings. Although an immediate appeal was not taken, after the entry of a final order, the Attorney General filed a cross appeal raising the issue of summary judgment. The two defendants argued the cross appeal should be dismissed because the summary judgment order was a final order from which an appeal had not been timely perfected. The supreme court denied the motion to dismiss and transferred the case to this court for disposition. Our opinion notes the supreme court's ruling on the motion to dismiss was binding on this court. Judge Bell, writing for this court, stated that the Attorney General's appeal from the final order was sufficient to bring the intermediate order granting summary judgment before the court for review. The opinion states that "[w]hen multiple defendants are joined in the same action, an order dismissing some but not all of them is ordinarily not final or appealable." *Id.* at 529, 313 S.E.2d at 340.

█ This particular point regarding dismissal of some, but not all, multiple defendants has not been cited subsequently by our courts. The *McLeod* case was cited as a general related authority in *Plaza Dev. Services v. Joe Harden Builder, Inc.*, 296 S.C. 115, 370 S.E.2d 893 (Ct.App.1988). In that case, this court held that an order granting a Rule 12(b)(6), SCRCP, motion as to some but not all claims against a single defendant was not immediately appealable. However, the *Plaza Development* case was overruled on that point by *Link v. School Dist. of Pickens County*, 302 S.C. 1, 393 S.E.2d 176, nt. 2 (1990). In *Link*, the supreme court noted it had previously held in *Lebovitz v. Mudd*, 289 S.C. 476, 347 S.E.2d 94 (1986) that an order granting a Rule 12(b)(6) motion as to one of multiple claims is directly appealable under S.C.Code Ann. Section 14-3-330(2) because it affects a substantial right and strikes out part of a pleading.

█ It is correct that the grant of the Rule 12(b)(1) motion in this case is not a final order as there is a remaining defendant. However, the practical effect of the grant of the motion is that it strikes out the Murphys' complaint with respect to the respondents. Viewing *McLeod* in light of *Lebovitz* and *Link*, we conclude an order granting a Rule 12

motion as to some, but not all of the defendants in a case, is directly appealable under Section 14-3-330(2) because it affects a substantial right and strikes out part of a pleading.

## II.

The Murphys contend the trial court erred in determining that their cause of action "arose" in the state where the diagnosis was made rather than where the exposure occurred for purposes of the South Carolina Door Closing Statute. We agree.

█ The South Carolina Door Closing Statute, S.C.Code Ann. § 15-5-150 (1976), provides in pertinent part:

An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court:

\* \* \*

(2) By a plaintiff not a resident of this state *when the cause of action shall have arisen* or the subject of the action shall be situated *within this state.*

(Emphasis added). This statutory provision prohibits a non-resident from maintaining an action against a foreign corporation in a South Carolina court unless the cause of action *arose* in South Carolina or the subject of the action is located here.[5]

█ It is well settled that the Door Closing Statute serves three basic legislative objectives related to the state's interests. First, it favors resident plaintiffs over non-resident plaintiffs. *Central R.R. & Banking v. Georgia Constr. & Inv. Co.*, 32 S.C. 319, 11 S.E. 192 (1890). Second, it provides a forum for wrongs connected with the state while avoiding the resolution of wrongs in which the state has little interest.

---

**5.** We note that "subject of the action" is typically inapplicable in personal injury actions. *See Ophuls & Hill, Inc. v. Carolina Ice & Fuel Co.*, 160 S.C. 441, 450, 158 S.E. 824, 827 (1931) (quoting *Columbia Nat'l Bank v. Rizer*, 153 S.C. 43, 55, 150 S.E. 316, 320 (1929), "The subject of the action is ... not the wrong which gives the plaintiff the right to ask the interposition of the court, nor is it that which the court is asked to do for him, but it must be the matter or thing, differing both from the wrong and the relief, in regard to which the controversy has arisen, concerning which the wrong has been done; and this is, ordinarily, the property, or the contract and its subject-matter, or other thing involved in the dispute.") (emphasis omitted).

*Rosenthal v. Unarco Industries, Inc.*, 278 S.C. 420, 297 S.E.2d 638 (1982); *Cox v. Lunsford*, 272 S.C. 527, 252 S.E.2d 918 (1979). Third, it encourages activity and investment within the state by foreign corporations without subjecting them to actions unrelated to their activity within the state. *Lipe v. Carolina, C. & O. Ry. Co.*, 123 S.C. 515, 116 S.E. 101 (1923).

■ The Door Closing Statute thus denies access to our courts to non-resident plaintiffs with claims that have, at best, a tenuous connection to this state. As evidenced in *Rosenthal*, the South Carolina Supreme Court employs, in part, a connectedness test to determine the applicability of the statute. *Rosenthal*, 278 S.C. at 424, 297 S.E.2d at 641.

Federal courts interpreting the Door Closing Statute have consistently recognized and followed our supreme court's emphasis on the alleged wrong's connection or nexus to South Carolina. *See Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 739 (4th Cir.1980) (noting that under the Door Closing Statute courts are denied subject matter jurisdiction to entertain a suit involving a "foreign cause of action brought by a foreign plaintiff against a foreign corporation"); *Bumgarder v. Keene Corp.*, 593 F.2d 572 (4th Cir.1979) (affirming the dismissal of an action under the South Carolina Door Closing Statute because the non-resident's exposure to asbestos occurred in North Carolina and the action could have been maintained there); *Collins v. R.J. Reynolds Tobacco Co.*, 901 F.Supp. 1038, 1044 (D.S.C.1995) [6] (granting defendant's motion for summary judgment under the Door Closing Statute because the non-resident plaintiff failed to submit proof "that [his] injuries were 'directly connected' to his cigarette purchases in South Carolina").

The trial court concluded: "South Carolina courts use the verbs 'arise' and 'accrue' interchangeably while determining

---

**6.** The fourth circuit affirmed the decision in an unpublished opinion, reported in full at 1996 WL 452595. The court stated: "His purchase and use of cigarettes in South Carolina, which remains unproven except for an insignificant percentage of the total packages he bought and consumed ... is too tenuous to qualify as 'causing' death in the instant case." *Id.* at *2. The present case is clearly distinguishable. The affidavit of Dr. Victor L. Roggli establishes a direct connection between Janet Murphy's South Carolina exposure to asbestos and her subsequent development of mesothelioma.

*when* a cause of action comes into existence.... Thus a cause of action arises, accrues, and springs into action only when *all* of the elements exist and one has a right to seek relief...." (Emphasis in original) (citations omitted).

To be sure, in the typical tort setting, the terms are often interchangeable. *See Stephens v. Draffin,* 327 S.C. 1 n. 4, 488 S.E.2d 307 n. 4 (1997). In *Cornelius v. Atlantic Grey Hound Lines,* 177 S.C. 93, 180 S.E. 791 (1935), for example, our supreme court in a wrongful ejectment action equated "arise" with "accrue." There, the right of action arose and accrued simultaneously. The instant case, however, presents a situation that demonstrates the difference between the terms.

A cause of action "arises" when the act or omission that creates the right to bring suit happens or begins. *Roques v. Continental Cas. Co.,* 17 La.App. 465, 135 So. 51, 52–53 (1931) ("In 1 Words and Phrases, Second Series, page 267, we find the following: 'The word 'arise' is used in various senses with the words 'begin, mount, appear, happen, proceed from, exist.' It has not the same significance as the word 'accrue,' which signifies 'result, add, acquire, receive, benefit.' A cause of action 'arises,' * * * when the obligation was created which gave rise to a right of action as soon as such right accrued thereon. *Doughty v. Funk,* 84 P. 484, 486, 15 Okl. 643, 4 L.R.A. (N.S.) 1029 [ (Okla.1905) ].' ").

A cause of action "accrues" when it becomes "complete so that the aggrieved party can begin and prosecute such action." *New York Times Co. v. Conner,* 291 F.2d 492, 495 (5th Cir.1961); *see also Heinrich ex rel. Heinrich v. Sweet,* 118 F.Supp.2d 73, 78 (D.Mass.2000) ("According to Black's Law Dictionary ... there is a subtle, yet important, difference between the two words. 'Accrue' means '[t]o come into existence as an enforceable claim or right.' Black's Law Dictionary 21 (7th ed.1999). In contrast, 'arise' means '[t]o originate' as in 'a federal claim arising under the U.S. Constitution.' " (citation omitted)); *Randy's Sanitation, Inc. v. Wright County, Minn.,* 65 F.Supp.2d 1017, 1022 (D.Minn.1999) ("As a general rule, a claim does not accrue until the plaintiff has 'a complete and present cause of action.' " (citations omitted)).

■ The record establishes that the alleged wrongdoing, from which the Murphys' right to bring this action proceeds, originated in South Carolina. Their claims, therefore, *arose* in this state even though they did not accrue until the mesothelioma was diagnosed.

■ In applying the Door Closing Statute, the manifestation of injury through diagnosis, while relevant, is not dispositive in every case for the purpose of determining whether a cause of action shall have arisen in South Carolina. Such an approach is too simplistic and would lead to results contrary to existing case law and the legislative goals of the statute.[7]

We hold that the Murphys may properly maintain their action in South Carolina, notwithstanding the fact that the injury was diagnosed in Virginia. The Murphys have demonstrated a sufficient connection to this state by showing that the act giving rise to their right of action occurred in South Carolina. We further believe that the exercise of jurisdiction under these circumstances would be entirely consistent with, and would serve, the laudable goals of the Door Closing Statute. Accordingly, South Carolina must open its courtroom doors to the Murphys' claims.

We, therefore, reverse and remand to the circuit court for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

GOOLSBY, Acting Chief Judge, CURETON and SHULER, JJ., DAVIS, MOREHEAD, and WILLIAMS, Acting Judges, concur.

HUFF, J., concurs in part and dissents in part in a separate opinion in which McKELLAR, Acting Judge, concurs.

---

7. For example, if a party were injured by a foreign corporation from exposure to asbestos solely in South Carolina, yet the diagnosis or manifestation of injury occurs only after the party moved to another state, the dissent's approach would foreclose that party from maintaining an action in our courts. Conversely, if a party were injured by exposure to asbestos solely in a state other than South Carolina, yet the diagnosis or manifestation of injury occurred here, the dissent's approach would permit the action to be filed and pursued in the South Carolina courts merely because the "element of injury" had been established in South Carolina. Such results would be contrary to existing law and recognized legislative objectives.

HUFF, J.:

I respectfully concur in part and dissent in part. I concur in the majority's opinion with regard to Issue I. Issue II of the opinion involves the trial court's application of the Door Closing Statute. I do not agree with the majority's opinion on this point, and respectfully dissent.

This case involves the application of South Carolina's Door Closing Statute.[8] Janet Murphy, a Virginia resident, alleged she developed mesothelioma as a result of "household or familial" exposure to asbestos fiber on the clothing of her father, Dr. Charles Baker.

## BACKGROUND

Janet Baker Murphy was born in Virginia in 1960. She lived with her parents, the Bakers, until 1978 when she entered college. After attending college, she returned to Virginia where she has resided since 1982. In July of 1995, Murphy was diagnosed with mesothelioma.

Janet Murphy's father, Dr. Charles Baker, is a chemical engineer who was employed by E.I. Du Pont de Nemours from 1951 until his retirement in 1984. He worked at the Du Pont facility in Waynesboro, Virginia from 1951 until 1966. From 1966 until 1969, Dr. Baker was employed at the Du Pont plant in Camden, South Carolina. He returned to the Waynesboro facility in mid–1969 and remained there until 1974. Dr. Baker spent the years from 1974 until the summer of 1978 at a Du Pont facility in the Netherlands. He returned to the Waynesboro plant in 1978 where he remained until his retirement in 1984.

According to Dr. Baker, his work over the years at various Du Pont facilities caused him to be exposed to asbestos dust and fibers. Dr. Baker testified by deposition that one of his major projects at the Camden plant was the development of a larger, higher capacity spinning cell for spinning Orlon acrylic fiber. The equipment involved in the spinning process was

---

8. As relevant to this case, S.C.Code Ann. § 15-5-150 (1977) provides "[a]n action against a corporation created by or under the laws of any other state, government, or country may be brought in the circuit court: (2) [b]y a plaintiff not a resident of this State when the cause of action shall have arisen ... within this State."

continually reconfigured. Dr. Baker stated he was exposed to insulation material while observing the removal and re-installation of the equipment. He was also exposed to asbestos in other areas of the Camden plant where various equipment changes were taking place. He stated there was always evidence of some dust in the area and he specifically recalled times when his clothes were dusty.

After his daughter was diagnosed with mesothelioma, Dr. Baker came to believe he had exposed his daughter to asbestos through his clothing. He held her as an infant and maintained a close relationship with her as she grew. Janet Murphy testified in her deposition that as a child she was "daddy's little girl." She would crawl into his lap and they would read stories or watch television on a daily basis. When her father came home from work, she would go through his coat pockets looking for mints.

In their motions to dismiss, the respondents asserted the circuit court lacked subject matter jurisdiction over the Murphys' complaint based upon application of the Door Closing Statute. After the receipt of memoranda of law and a hearing, the circuit court granted the motions.

The court stated that since the Murphys were not residents of South Carolina, jurisdiction rested on where the cause of action arose. The court held that a cause of action "arises, accrues, and springs into action only when *all* of the elements exist and one has a right to seek relief (i.e. a cause of action) based on such elements. Mere threat of future injury is too speculative to support present adjudication." The trial court concluded Janet Murphy's cause of action did not arise until she was diagnosed with mesothelioma in Virginia in 1995. At that point, the final element (i.e. injury) needed for a valid cause of action occurred.

## DISCUSSION

The Murphys argue the trial court erred in its application of the Door Closing Statute. They assert that, with respect to an asbestos disease case, the cause of action arises in the state of exposure as opposed to the state of diagnosis. The Murphys argue the statute's requirement that the "cause of action shall have arisen ... within this state" requires a geographical

connection to South Carolina. Since some of Janet Murphy's exposure occurred in this state from 1966 through 1969, the appellants contend they meet the jurisdictional requirements of the Door Closing Statute.

In support of their geographical nexus argument, the Murphys rely heavily upon three Door Closing Statute cases. In *Bumgarder v. Keene Corp.*, 593 F.2d 572 (4th Cir.1979), the federal appeals court held no countervailing federal considerations required it to ignore application of the South Carolina Door Closing Statute. Accordingly, the circuit court affirmed the district court decision to dismiss the asbestos disease case. The case states Bumgarder could have maintained his suit in North Carolina, "the state where he lived, worked and was allegedly exposed to asbestos." *Id.* at 573. In *Collins v. R.J. Reynolds Tobacco Co.*, 901 F.Supp. 1038 (D.S.C.1995), the federal district court held the Door Closing Statute jurisdictionally barred a wrongful death suit by a Georgia resident against several foreign corporations. The cause of action allegedly arose from Collins's development of emphysema as a result of smoking cigarettes manufactured by the various corporate defendants. The district court concluded Collins's claims arose in Georgia "[b]ecause any cigarette purchases by Collins in South Carolina were incidental to his job as a truck driver and were minimal in nature, and because all of the remaining connections to plaintiff's claims are with Georgia...." *Id.* at 1044. In that regard, the court noted Collins lived in Georgia; worked for a Georgia trucking company; and was diagnosed, treated, and died in Georgia. Finally, in *Rosenthal v. Unarco Industries, Inc.*, 278 S.C. 420, 297 S.E.2d 638 (1982), the South Carolina Supreme Court held the Door Closing Statute was constitutional as it did not violate equal protection. In the opinion, the court noted the Door Closing Statute barred the plaintiff's claims as he was a New York State resident and it was undisputed "the plaintiff has sustained no exposure and has not been employed within the state of South Carolina." *Id.* at 425, 297 S.E.2d at 642.

I do not believe these three cases offer definitive support for the appellants' position. The *Bumgarder* case is a two paragraph opinion which provides no specific analysis of the facts as they relate to application of the Door Closing Statute. The *Collins* case notes the facts of geographical nexus with

South Carolina, but it also makes a conclusion that "one test for determining where a cause of action arises is to ascertain where the delict or wrong has its effect." *Collins*, 901 F.Supp. at 1044. Such an argument cuts against the appellants' position since undoubtedly the delict in this case has its effect in Virginia. Finally, the *Rosenthal* case is not dispositive because the focus of that opinion was the constitutional law question.

The Door Closing Statute relates to the subject matter jurisdiction of the circuit courts. *Nix v. Mercury Motor Express Inc.*, 270 S.C. 477, 242 S.E.2d 683 (1978). Our supreme court has stated the Door Closing Statute accomplishes several legislative objectives rationally related to the state's interest. These objectives are (1) favoritism to resident plaintiffs over nonresident plaintiffs, (2) provision of a forum for wrongs connected with the state while avoiding the resolution of wrongs in which the state has little interest, and (3) encouragement of activity and investment in the state by foreign corporations without subjecting them to actions unrelated to their activity within the state. *Rosenthal v. Unarco Industries Inc.*, 278 S.C. 420, 297 S.E.2d 638 (1982).

The crucial language in the statute is "when the cause of action shall have arisen ... within this [s]tate." In *Ophuls & Hill v. Carolina Ice & Fuel Co.*, 160 S.C. 441, 158 S.E. 824 (1931), the supreme court defined the term "cause of action" in the context of the Door Closing Statute. The court stated "the *cause of action* has been described as being a legal wrong threatened or committed against the complaining party." *Id.* at 450, 158 S.E. at 827. *See also Knight v. Fidelity & Casualty Co. of New York*, 184 S.C. 362, 192 S.E. 558 (1937). With respect to the term "arise" in the Door Closing Statute, the supreme court in *Cornelius v. Atlantic Grey Hound Lines*, 177 S.C. 93, 180 S.E. 791 (1935), equated "arise" with "accrue" and stated that a "cause of action accrues when facts exist which authorize one party to maintain an action against another." *Id.* at 96, 180 S.E. at 792. (quoting 1 C.J. 1146). Beyond the context of the Door Closing statute, the supreme court has stated that our cases have used the verbs "arise" and "accrue" interchangeably and a cause of action in tort accrues at the moment when the plaintiff has a legal right to sue on it. *Stephens v. Draffin*, 327 S.C. 1, 488 S.E.2d 307 (1997).

The elements of a cause of action in tort are (1) duty, (2) breach of that duty, (3) proximate causation, and (4) injury. *Shipes v. Piggly Wiggly St. Andrews*, 269 S.C. 479, 238 S.E.2d 167 (1977). In the factual context of this case, all of those elements were met when Janet Murphy was diagnosed with mesothelioma. Prior to that point, the element of injury had not been established. Once injury was established, the cause of action or "legal wrong" had "arisen" and Murphy could maintain an action in tort against the respondents. Accordingly, the cause of action arose in Virginia, not South Carolina.

For the above stated reasons, I would affirm.

McKELLAR, Acting Judge, concurs.