590 S.E.2d 479

Janet B. MURPHY and David M. Murphy, Respondents,

v.

OWENS–CORNING FIBERGLAS CORP., Pittsburgh Corning Corporation, and as successor to Unarco Industries, Inc., ACandS, Inc., Rock Wool Manufacturing Co., Inc., The Anchor Packing Company, Rapid American Corporation, Garlock, Inc., Westinghouse Electric Corporation, Uniroyal, Inc., Metropolitan Life Insurance Co., Fibreboard Corporation, National Service Industries, Inc., A.P. Green Industries, Inc., Flexitallic Gasket Company, Inc., GAF Corporation, Armstrong World Industries, Inc., Asbestos Claims Management Co., United States Gypsum Company, T & N, PLC., C.E. Thurston & Sons, Inc., PPG Industries, Inc., Covil Corporation, and E.I. Dupont de Nemours and Company, Defendants,

of which E.I. Dupont De Nemours and Company is Petitioner.

No. 25740.

Supreme Court of South Carolina.

Heard Feb. 6, 2003.

Refiled Dec. 8, 2003.

David E. Dukes, C. Mitchell Brown, and Michael W. Hogue, all of Nelson Mullins Riley & Scarborough, L.L.P., of Columbia, for petitioner.

L. Joel Chastain, of West Columbia, Terry E. Richardson, Jr., and Daniel S. Haltiwanger, both Richardson, Patrick, Westbrook and Brickman, L.L.C., of Barnwell, V. Brian Bevon, of Ness, Motley, of Mt. Pleasant, and William J. Cook, of Ness, Motley, of Barnwell, for respondents.

R. Bruce Shaw and W. Thomas Causby, both of Nelson Mullins Riley & Scarborough, of Columbia, for Amicus Curiae Owens–Illinois, Inc.

Justice PLEICONES:

We granted certiorari to consider when a "cause of action shall have arisen ... within this State" under the Door Closing Statute, S.C.Code Ann. § 15–5–150 (1976), where the cause of action is a tort suit premised on a latent disease claim. The circuit court held this suit barred by the statute, and a panel of the Court of Appeals affirmed. The case was then reheard *en banc*, and by a vote of 7 to 2,[1] the Court of Appeals held the Door Closing Statute did not apply. *Murphy v. Owens–Corning Fiberglas Corp.*, 346 S.C. 37, 550 S.E.2d 589 (Ct.App.2001). We granted certiorari and now affirm.

---

1. In this case, the *en banc* panel consisted of four judges of the Court of Appeals and five acting Court of Appeals judges drawn from other state courts. The five acting judges sat by designation of Chief Justice Toal. *See* S.C. Const. art. V, § 4 ("The Chief Justice shall ... have the power to assign any judge to sit in any court within the unified judicial system").

## FACTS

Petitioner E.I. du Pont de Nemours and Company (petitioner) employed respondent Janet Murphy's (Janet's) father (Father) as a chemical engineer from 1951 to 1984. Father was exposed to insulating asbestos dust and fibers in the course of his employment as he observed the reconfiguration of textile spinning equipment.

Father worked at petitioner's Virginia plant from 1951 to 1966. Janet was born in 1960. From 1966 until 1969 the family lived in South Carolina. They returned to Virginia until 1974, then spent four years overseas, and Father spent the last six years of his employment with petitioner in Virginia.

In July 1995, Janet was diagnosed with mesothelioma, a lung cancer.[2] She brought this tort action in South Carolina, and her husband (David) brought his loss of consortium suit here. They allege Janet developed the disease as the result of her childhood exposure to asbestos fibers and dust in Father's clothing. Further, they contend that while Father was exposed to asbestos at all of petitioner's facilities, his exposure was greatest at the South Carolina plant.

Petitioner moved to dismiss Janet's and David's claims under Rule 12(b)(1), SCRCP, on the grounds South Carolina lacked subject matter jurisdiction over the suits in light of the Door Closing Statute. The circuit court dismissed the actions. *See e.g. Nix v. Mercury Motor Express, Inc.,* 270 S.C. 477, 242 S.E.2d 683 (1978). Janet and David appealed, and the *en banc* Court of Appeals reversed. *Murphy v. Owens–Corning, supra.* Following the circuit court's ruling and the decision of the Court of Appeals, we overruled our precedents including *Nix* which had held that the Door Closing Statute determines subject matter jurisdiction, and explained that the statute in fact governs a party's capacity to sue. *Farmer v. Monsanto Corp.,* 353 S.C. 553, 579 S.E.2d 325 (2003).

## LAW

The Door Closing Statute provides:

§ 15–5–150. Foreign corporations as defendants.

---

2. Janet died of mesothelioma during the pendency of this matter.

An action against a corporation created by or under the laws of any other state, government, or country may be brought in the circuit court:

(1) By any resident of this State for any cause of action; or

(2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.

In this case, subsection (2) of § 15–5–150 is the relevant provision since neither Janet nor David is a South Carolina resident. In *Ophuls & Hill v. Carolina Ice & Fuel Co.*, 160 S.C. 441, 158 S.E. 824 (1931), the Court explicated the meaning of the statutory terms 'cause of action' and 'subject of the action.' 'Cause of action' was "described as being a legal wrong threatened or committed against the complaining party" while the 'subject of the action' was defined as *"the matter or thing, differing both from the wrong and the relief, in regard to which the controversy has arisen, concerning which the wrong has been done; and this is, ordinarily the property, or the contract and its subject matter,* or other thing involved in the dispute." *Id.* at 450, 158 S.E. at 827 (emphasis in original). In this tort case, the focus is on the term 'cause of action,' and not on the 'subject of the action.'

■ In order for Janet to bring her suit [3] in South Carolina, she must meet the Door Closing Statute's requirement that "the cause of action shall have arisen ... within this State." § 15–5–150(2). Janet's complaint unequivocally meets the 'cause of action' component of this requirement since she alleges that the legal wrong occurred in South Carolina when she was exposed to asbestos fibers and dust on Father's clothing. *Ophuls & Hill v. Carolina Ice & Fuel Co., supra.* As the Court of Appeals held, the critical inquiry here is whether the cause of action **arose** within the State. We thus examine, for the first time, when a latent disease cause of action 'arises.' *Cf. Grillo v. Speedrite Prods., Inc.*, 340 S.C. 498, 532 S.E.2d 1 (Ct.App.2000) *cert. denied* December 12, 2000 (discovery rule/statute of limitations in toxic exposure

---

3. We focus our discussion on Janet's suit since David's consortium claim is dependent on the viability of Janet's claim.

case). In doing so, we reexamine our precedents which equate the terms 'arise' and 'accrue.'

Our consideration of the novel issue raised by this case begins with an examination of the policies underlying the Door Closing Statute. Those policies have been articulated as follows:

(1) It favors resident plaintiffs over nonresident plaintiffs;

(2) It provides a forum for wrongs connected with the State while avoiding the resolution of wrongs in which the State has little interest; and

(3) It encourages activity and investment within the State by foreign corporations without subjecting them to actions unrelated to their activity within the State.

*Farmer v. Monsanto Corp., supra* citing *Rosenthal v. Unarco Industries, Inc.,* 278 S.C. 420, 297 S.E.2d 638 (1982).

The first policy, favoring resident plaintiffs, is reflected in subsection (1) of § 15-5-150 of the Door Closing Statute, which allows "any resident of this State" to maintain "any cause of action." This subsection, essentially "opening the Door" for resident plaintiffs, is irrelevant to determining whether Janet, a nonresident, has the capacity to maintain this suit. The second policy expressed in the statute restricts actions brought in state courts to those where the alleged wrong is connected to the State. Janet's suit does not offend this policy. The third policy consideration when a nonresident seeks to sue a foreign corporation in state court is whether the suit is predicated on the corporation's in-state activities. *Id.* Permitting Janet to maintain her action in our state courts does not contravene this policy. Having concluded that no fundamental policy would be offended by this suit, we turn to the arise/accrue distinction.

In traditional tort settings, we have held that a cause of action arises in this State for purposes of the Door Closing Statute when the plaintiff has the right to bring suit. *See Cornelius v. Atlantic Grey Hound Lines,* 177 S.C. 93, 180 S.E. 791 (1935). In construing the statutory requirement that "the cause of action shall have arisen ... within in this State," the *Cornelius* court cited with approval to an authority that "stated that 'a cause of action **accrues** when facts exist which authorize one party to maintain an action against another.' "

*Id.* at 96, 180 S.E. at 792 (emphasis supplied). *Cornelius* is consistent with our later decision in *Stephens v. Draffin*, 327 S.C. 1, 488 S.E.2d 307 (1997), where we held "our cases use the verbs 'arise' and 'accrue' interchangeably when discussing the issue of the juncture at which the right to sue came into existence." *Id.* at footnote 4; *see also Tilley v. Pacesetter Corp.*, 355 S.C. 361, 585 S.E.2d 292 (2003).

Were we to apply our traditional view of when a tort cause of action arises or accrues, we must conclude that Janet's cause of action did not arise "within the State" because no injury or damages occurred while she was in South Carolina.[4] Until the exposure to asbestos resulted in injury or damage, Janet's tort cause of action did not accrue. *See e.g., Gray v. Southern Facilities*, 256 S.C. 558, 183 S.E.2d 438 (1971) ("It is basic that a negligent act is not in itself actionable and only becomes such when it results in injury or damage to another"). Respondents urge us to reconsider whether to recognize a distinction between the terms 'arise' and 'accrue' in the context of latent disease tort actions within the ambit of the Door Closing Statute.

As explained above, the policies reflected in the Door Closing Statute would not be offended by allowing Janet's suit to proceed in state court. The only obstacle to Janet's maintenance of this action results from the nature of the latent disease process.

We find that it is not appropriate to apply a strict accrual test to latent disease tort actions brought by a nonresident against a foreign corporation. We hold that the proper inquiry is whether the foreign corporation's activities that allegedly exposed the victim to the injurious substance, and the exposure itself, occurred within the State. If so, then the legal wrong was committed here. *See Ophuls & Hill v. Carolina Ice & Fuel Co., supra.* The fact that the legal wrong did not result in injury and/or damages until the plaintiff had

---

4. Unlike the Court of Appeals, we do not rely upon a medical doctor's affidavit, submitted after the motion to dismiss was granted, to find injury at the time of exposure. It is questionable whether the affidavit was properly before the circuit court when it was deciding the Rule 59 motion. *See* Wright, Miller, & Kane *Fed. Proc. Practice: Civil 2d* § 2810.1 (1995 and Supp.2002). Whether to allow the affidavit upon remand is a question we leave to the trial court's discretion.

left the State does not foreclose a suit under the Door Closing Statute. Janet's latent disease claim 'arose' in South Carolina.

## CONCLUSION

The circuit court erred in dismissing the suits under the Door Closing Statute.[5]  The decision of the Court of Appeals, reversing that decision and remanding the case to the circuit court, is

AFFIRMED.

WALLER and BURNETT, JJ., concur.  TOAL, C.J., concurring in result in a separate opinion in which MOORE, J., concurs.

Chief Justice TOAL.

Although I agree the Court of Appeals should be affirmed in this case, I respectfully disagree with the analysis employed by the majority, and, therefore, write separately to concur in result only. *See Murphy v. Owens–Corning Fiberglas Corp.,* 346 S.C. 37, 550 S.E.2d 589 (Ct.App.2001).  The majority opinion purports to affirm the Court of Appeals, but it ignores the distinction between **"arise"** and **"accrue"** upon which the Court of Appeals based its decision.  For the following reasons, I would affirm the Court of Appeals opinion as it was written.

The South Carolina Door Closing Statute provides,

An action against a corporation created by or under the laws of any other state, government, or country may be brought in circuit court:

(1) By any resident of this State for any cause of action; or

---

**5.** We do not perceive any meaningful distinction between our resolution of this issue and that of the concurring opinion.  That opinion differs only in that it decides not just the question whether Janet's claim arose in South Carolina, but also determines the action accrued in 1995 upon Janet's diagnosis.  Since this case comes before us in the context of a 12(b)(1) motion, we need not decide any factual or legal question other than whether the circuit court has subject matter jurisdiction.

(2) By a plaintiff not a resident of this State when the cause of action shall have **arisen** or the subject of the action shall be situated within this State.

S.C.Code Ann. § 15–5–150 (1976) (emphasis added). Both the majority opinion of this Court and the Court of Appeals' opinion recognize that in order for Janet to bring her suit in South Carolina, she must meet the Door Closing Statute's requirement that her cause of action **arise** within this State. S.C.Code Ann. § 15–5–150; *see Murphy*, 346 S.C. at 46, 550 S.E.2d at 593.

After noting that **arise** and **accrue** have been used interchangeably in the "typical tort setting," the Court of Appeals' opinion concluded that there is a distinction between **arise** and **accrue** in latent disease cases such as this one. *Murphy*, 346 S.C. at 47–48, 550 S.E.2d at 594–95.

The record establishes that the alleged wrongdoing, from which [Janet's] right to bring this action proceeds, originated in South Carolina. Their claims, therefore, arose in this state even though they did not accrue until the mesothelio-mia was diagnosed.

In applying the Door Closing Statute, the manifestation of injury through diagnosis, while relevant, is not dispositive in every case for the purpose of determining whether a cause of action shall have **arisen** in South Carolina. Such an approach is too simplistic and would lead to results contrary to existing case law and the legislative goals of the statute.

*Id.* at 48, 550 S.E.2d at 594–95 (emphasis added).

The majority opinion, on the other hand, declines to accept a distinction between **arise** and **accrue,** stating, "[a]pplying our traditional view of when a tort cause of action **arises** or **accrues,** we must conclude that Janet's cause of action did **not arise** 'within the State,' because no injury or damages occurred in South Carolina." (emphasis added). The majority averts the result this conclusion logically mandates on grounds that "it is not appropriate to apply a strict accrual test to latent disease tort actions brought by a nonresident against foreign corporations."

We hold that the proper inquiry is whether the foreign corporation's activities that allegedly exposed the victim to the injurious substance, and the exposure itself, occurred

within the State. If so, then the legal wrong was committed here. The fact that the legal wrong did not result in injury and/or damages until the plaintiff had left the State does not foreclose the Door Closing Statute. Janet's latent disease claims 'arose' in South Carolina.

(citations omitted).

Although the majority reaches the same result as the Court of Appeals, in my opinion, the only appropriate way to reach this result is to distinguish **arise** and **accrue** according to their technical, legal definitions. *See Murphy*, 346 S.C. at 47, 550 S.E.2d at 594 (citations omitted) (stating that a cause of action **arises** when the act or omission that creates the right to bring the suit happens or begins and that a cause of action **accrues** when it becomes complete so that the aggrieved party can prosecute the action). The majority's decision goes beyond mere interpretation of the language of the Door Closing Statute and, instead, appears to make a judicial exception to the Statute for latent disease cases.

In this case, Janet alleges that she came into contact with asbestos in South Carolina between 1966 and 1969, which finally manifested in a diagnosis of mesothelioma in July 1995. Janet's Father worked at Petitioner's South Carolina plant during these years, and Janet alleges she was exposed to asbestos fibers and dust that became caught in Father's clothing while working at the plant. Under these facts, I would find that Janet's cause of action against Petitioner **arose** in South Carolina, but did not **accrue** until her diagnosis of mesothelioma in Virginia. While **arise** and **accrue** may be used interchangeably appropriately in most circumstances (because most causes of action **arise** and **accrue** simultaneously), the two terms retain a technical distinction which comes into play in latent disease cases such as this one.

For the foregoing reasons, I write separately and concur in result only.

MOORE, J., concurs.